# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| WYNETTA JONES, LEILA SPAGNOLE NEGRON, FRED ROBANSER, SUSANNA MELANSON, and DENISE SALLES on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>MERCEDES-BENZ USA, LLC and DAIMLER AG,<br><br>          Defendants. | **COMPLAINT - CLASS ACTION FOR:**<br><br>(1)  Breach of Express Warranty or Written Warranty<br>(2)  Breach of Express Warranty – Magnuson-Moss Warranty Act<br>(3)  Breach of Implied Warranty<br>(4)  Breach of Implied Warranty – Magnuson-Moss Warranty Act<br>(5)  Violations of Georgia Fair Business Practices Act<br>(6)  Violations of Georgia Uniform Deceptive Trade Practices Act<br>(7)  Violations of California Consumer Legal Remedies Act<br>(8)  Violations of California Unfair Competition Law<br>(9)  Breach of Express Warranty – Song-Beverly Warranty Act<br>(10)  Breach of Implied Warranty – Song-Beverly Consumer Warranty Act<br>(11)  Violations of New Jersey Consumer Fraud Act<br>(12)  Violations of Connecticut Unfair Trade Practices Act<br>(13)  Fraud by Concealment<br>(14)  Unjust Enrichment<br><br>**JURY TRIAL DEMANDED** |

2378091.14

## **TABLE OF CONTENTS**

I.      INTRODUCTION..................................................................................1

II.     PARTIES ..............................................................................................3

III.    JURISDICTION..................................................................................12

IV.     VENUE................................................................................................14

V.      APPLICABLE LAW............................................................................15

VI.     FACTUAL ALLEGATIONS................................................................15

    A.   The Electrical System Defect.................................................................15

    B.   Mercedes Knew of the Electrical System Defect Prior to Sale or Lease of
    the Class Vehicles. .................................................................................16

    C.   Pre-Release Design And Testing ...........................................................17

    D.   Mercedes Knew of the Electrical System Defect From Its Own Service
    Center Data. ...........................................................................................17

    E.   Mercedes Knew of the Electrical System Defect Based on Its Receipt of
    Large Numbers of Orders for Replacement Batteries. ....................................18

    F.   Mercedes Knew of the Electrical System Defect from Its Own Technical
    Service Bulletins. ...................................................................................18

    G.   Mercedes Knew of the Electrical System Defect from Class Member
    Complaints Made Directly to Mercedes and/or Collected by NHTSA's Office
    of Defect Investigations. .......................................................................21

    H.   Mercedes Knew of the Electrical System Defect Based on Class Member
    Complaints on Public Online Forums......................................................23

    I.   Mercedes Knew of the Electrical System Defect Based on Lemon Law
    Decisions. ...............................................................................................26

VII.    APPLICABLE WARRANTIES ...........................................................29

VIII.   MERCEDES MARKETING AND CONCEALMENT ..........................30

IX.     FRAUDULENT CONCEALMENT ALLEGATIONS .............................33

X.      TOLLING OF THE STATUTE OF LIMITATIONS................................36

    A.   Fraudulent Concealment Tolling.............................................................36

    B.   Estoppel .................................................................................................37

2378091.14

C.  Discovery Rule ........................................................................37

XI.  CLASS ACTION ALLEGATIONS ..........................................38

B.  Numerosity .........................................................................39

C.  Typicality ...........................................................................39

D.  Adequate Representation ....................................................39

E.  Predominance of Common Issues.......................................40

F.  Superiority..........................................................................42

FIRST CAUSE OF ACTION Breach of Express Warranty or Written Warranty (by Fred Robanser, Susanna Melanson, and Denise Salles against MBUSA only) ......42

SECOND CAUSE OF ACTION Breach of Express Warranty – Magnuson-Moss Warranty Act (by Fred Robanser, Susanna Melanson, and Denise Salles against MBUSA only ) ........................................................................................47

THIRD CAUSE OF ACTION Breach of Implied Warranty (by all Plaintiffs against MBUSA only)................................................................................49

FOURTH CAUSE OF ACTION Breach of Implied Warranty – Magnuson-Moss Warranty Act (by all Plaintiffs against MBUSA only) ...........................................50

FIFTH CAUSE OF ACTION Violations of Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390, *et seq.* (by Wynetta Jones against all Defendants) .............51

SIXTH CAUSE OF ACTION Violations of Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370, *et seq.* (by Wynetta Jones against all Defendants) ........................................................................................55

SEVENTH CAUSE OF ACTION Violation of California Consumer Legal Remedies Act ("CLRA")          (by Fred Robanser and Denise Salles against all Defendants) ........................................................................................59

EIGHTH CAUSE OF ACTION Violation of California Unfair Competition Law (by Fred Robanser and Denise Salles against all Defendants) ................................63

NINTH CAUSE OF ACTION Breach of Express Warranty pursuant Song-Beverly Warranty Act........................................................................................64

TENTH CAUSE OF ACTION Breach of Implied Warranty pursuant Song-Beverly Consumer Warranty Act (by Fred Robanser and Denise Salles against all Defendants) ........................................................................................68

ELEVENTH CAUSE OF ACTION Violation of New Jersey Consumer Fraud Act

- ii -

("NJCFA") (by Leila Spagnole-Negron against all Defendants) ...........................70

TWELTH CAUSE OF ACTION Violation of Connecticut Unfair Trade Practices Act ("CUTPA") (by Susanna Melanson against all Defendants)..........................72

THIRTEENTH CAUSE OF ACTION Fraud by Concealment (by all Plaintiffs against all Defendants)................................................................................74

FOURTEENTH CAUSE OF ACTION Unjust Enrichment (by all Plaintiffs against all Defendants) ..........................................................................................77

    XII.     RELIEF REQUESTED .........................................................................78

    XIII.    DEMAND FOR JURY TRIAL..............................................................79

2378091.14

## I.    INTRODUCTION

1.      Plaintiffs Wynetta Jones, Leila Spagnole Negron, Fred Robanser, Susanna Melanson, and Denise Salles bring this action individually for themselves and on behalf of all persons who purchased or leased certain vehicles equipped with uniform and uniformly defective electrical systems designed, manufactured, distributed, warranted, marketed, and sold or leased by Mercedes-Benz USA, LLC ("MBUSA") and Mercedes-Benz Group AG f/k/a Daimler ("MB Group") (collectively, "Mercedes"), as described below.

2.      The vehicles at issue in this action include Mercedes owners of Class S, C, A, CLA, CLS, G, GLA, GLK, GLC, ML, GLE, GL, GLS, and E vehicles that Mercedes manufactured between 2004 to 2022 (the "Class Vehicles").

3.      This action is brought to remedy violations of law in connection with Mercedes' design, manufacture, marketing, advertising, selling, warranting, and servicing of the Class Vehicles. The Class Vehicleshave a serious design defect that causes the battery to rapidly drain ("Electrical System Defect" or "Defect"), ultimately leaving the consumer with a dead battery and an inoperable vehicle. The Electrical System Defect occurs unexpectedly and leaves drivers stranded in potentially unsafe circumstances, requiring them to incur sudden expenses such as roadside assistance, mobile battery jump packs, costly diagnostics, and repeated battery replacements.

4.      On information and belief, the Electrical System Defect is substantially the same, from an electrical engineering standpoint, in all Class Vehicles, in that the Electrical System in each Class Vehicle is made up of substantially the same components, and employs the same general mechanism to deliver electricity to the engines and electrical systems of the Class Vehicles.

5.     The Electrical System Defect renders the Class Vehicles inoperable and may create an unreasonable risk to Class Members' safety when leaving Class Members stranded and in need of roadside assistance. And Mercedes does not seem to have a permanent, effective remedy for the Defect - Mercedes' only "solutions" to the Electrical System Defect are temporary "band aids" that force Class Members to pay for unexpected out-of-pocket expenses, such as diagnostics, replacement batteries, towing services, mobile battery jump packs, trickle chargers, software updates, and rental cars.  But because of the Electrical System Defect exists within the Class Vehicles, these "band aids" are ineffective and expose Class Members to instances of repeat failures that leave the Class Vehicles inoperable.

6.     On information and belief, prior to Plaintiffs' purchase or lease of the Class Vehicles, Mercedes knew of the Electrical System Defect through, or as evidenced by, sources such as pre-release design and testing information; lemon law arbitration decisions; technical service bulletins; service center data; replacement part sales data; early consumer complaints made directly to Mercedes, collected by the National Highway Transportation Safety Administration's Office of Defect Investigation ("NHTSA ODI"); and/or posted on public online vehicle owner forums; testing done, including testing in response to consumer complaints; aggregate data from Mercedes dealers; and other internal sources as yet unavailable to Plaintiffs without discovery.

7.     In fact, some Mercedes service centers have told Class Members the Electrical System Defect is a "known issue," while also deceptively telling other Class Members nothing is wrong with their Class Vehicles.  Yet Mercedes has knowingly failed to disclose and actively concealed the Electrical System Defect from Class Members and the public prior to purchase/lease.  Mercedes continues to

market and advertise its battery, a component of its electrical system,  as promising "advanced performance," "efficiency," and "fine-tuned to complement" the "exact network of engine sensors, electrical harnesses, and signal receivers" in the Class Vehicles, which the electrical system does not do.

8.     Mercedes knew or should have known that the "solutions" it charged Class Members for to "remedy" the Electrical System Defect were not permanent fixes for the Defect.

9.     The Electrical System Defect negatively affects the driveability and usefulness of the Class Vehicles.  The Electrical System Defect is substantially certain to manifest in the Class Vehicles, and many Class Members have had their batteries (and replacement batteries) die multiple times.

10.    Mercedes has failed to provide a permanent in-warranty fix for the Defect and failed to reimburse Class Members for the costs of its inadequate and temporary "solutions."

11.    As a result of Mercedes' misconduct, Plaintiffs and Class Members were harmed and suffered actual damages, in that the Class Vehicles have manifested, and continue to manifest, the Electrical System Defect, and Mercedes has not provided a permanent remedy for this Defect.  Furthermore, Plaintiffs and Class Members incurred, and will continue to incur, out-of-pocket unreimbursed costs and expenses relating to the Electrical System Defect.

## II.    PARTIES

### *Plaintiff Wynetta Jones (Georgia)*

12.    Plaintiff Wynetta Jones resides in Austell, Georgia.

13.    Ms. Jones owns a 2010 Mercedes E550, which she purchased used on January 10, 2021 in a private sale in Georgia.

14.     Mr. Jones's Class Vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by Mercedes, and bears the Vehicle Identification No. WDDGJ4HB0DF966835.

15.     Ms. Jones purchased the Class Vehicle for her personal, family, and household use.

16.     Ms. Jones expected her Class Vehicle to be of good and merchantable quality and not defective.  She had no reason to know, or expect, that the Electrical System Defect would unexpectedly drain her battery and render her car inoperable, nor was she aware from any source prior to purchase of the repeated, ineffective, and costly "repairs"  Mercedes suggests are necessary to operate her Class Vehicle.

17.     Ms. Jones first experienced the battery drain caused by the Electrical System Defect in approximately January of 2021, a week after purchasing her vehicle, and after a new battery was put in it.

18.     Ms. Jones's vehicle sat inoperable for two days until she jump started the vehicle, which allowed her to drive the vehicle for several days until the battery drain reoccurred.

19.     Ms. Jones remained baffled at the battery drains because they occurred despite her turning off all of the electrical components within her control upon turning off the the engine of her vehicle.

20.     After jump starting the vehicle again, Ms. Jones drove the vehicle to a local Mercedes dealership and complained of the battery drain.

21.     Ms. Jones's vehicle remained at the Mercedes dealership for about a week without any repair. The dealership advised Ms. Jones that they could not find any faults with the vehicle.

22.     Shortly after Ms. Jones retrieved her vehicle from the Mercedes dealership in February 2021, Ms. Jones's vehicle did not start again.  She was advised that she needed a new starter and after agreeing to same, her vehicle failed yet again the same day, at which time the  dealership sold her a new battery. Despite this, she continued to experience more failures from the Electrical System Defect.

23.     Based on experience with her last battery and the nature of the Defect, Ms. Jones is likely to suffer more battery failures.

24.     To date, Ms. Jones has spent approximately $1,174.00 for multiple batteries, a starter, and labor due to the Electrical System Defect.

25.     Had Mercedes disclosed the Defect, Ms. Jones would not have purchased her Class Vehicle or would have paid significantly less for it.

26.     On March 22, 2021, May 17, 2021, and February 24, 2022 Ms. Jones, through counsel, sent a notice letters on behalf of herself and all other Class members to Defendants requesting relief and repair of the Defect. Mercedes through Counsel responded to each letter denying the existance of the Defect and offering no class-wide relief for it.

*Plaintiff Leila Spagnole-Negron (New Jersey)*

27.     Plaintiff Ms. Spagnole-Negron resides in Port Saint Lucie, Florida.

28.     Ms. Spagnole-Negron owns a 2004 Mercedes CLK 320, which she purchased new at a Mercedes dealership, from a Mercedes dealership in New Jersey in 2004.

29.     Ms. Spagnole-Negron's Class Vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by Mercedes, and bears the Vehicle Identification No. WDBTK65G14T029218.

30.     Ms. Spagnole-Negron purchased the Class Vehicle for her personal, family, and household use.

31.     Ms. Spagnole-Negron expected her Class Vehicle to be of good and merchantable quality and not defective.  She had no reason to know, or expect, that the Electrical System Defect would drain her battery and render her car inoperable, nor was she aware from any source prior to purchase of the unexpected, extraordinary, and costly maintenance steps Mercedes suggests are necessary to operate her Class Vehicle.

32.     In 2019, Ms. Spagnole-Negron was in a Dunkin Donuts drive-thru when her vehicle suddenly and without warning turned off. After good samaratians pushed her vehicle into a parking space, her vehicle would not restart until 45 minutes later. Ms. Spagnole-Negron replaced the battery following this incident.

33.     In April 2021 Ms. Spagnole-Negron went to her garage to drive her vehicle only to find the battery drained.  Ms. Spagnole-Negron took her vehicle to a local Tires Plus to have the battery replaced and incurred out-of-pocket costs as a result, but Ms. Spagnole-Negron continued to experience the battery drain when she went to her vehicle in the morning.

34.     Ms. Spagnole-Negron had the battery in her vehicle replaced three times since taking it to Tires Plus in April 2021. The Tires Plus performed diagnostics on Ms. Spagnole-Negron's vehicle, but it could not determine the cause of the battery drain.

35.     Following the third battery change, the vehicle failed again in two days and remains disabled to this day.

36.     In total, Ms. Spagnole-Negron's vehicle has failed to start at least four times since the initial vehicle purchase.

2378091.14

37.     To date, Ms. Spagnole-Negron has spent approximately $625.00 for two batteries, labor, and a tow due to the Electrical System Defect.

38.     Prior to this purchase, Ms. Spagnole-Negron was not advised of the Defect and tendency, known by Mercedes, of her vehicle to become inoperable because of the Electrical System Defect.  She relied upon Mercedes' assertions of the drivability of her new vehicle via salesmen, brochures, and ads. She also reasonably expected that Mercedes would stand behind its products and claims for warranty benefits.  Ms. Spagnole-Negron reasonably expected to receive a vehicle with state-of-the-art engineering.

39.     Based on experience with her batteries and the nature of the Defect, Ms. Spagnole-Negron is likely to suffer more battery failures.

40.     Had Mercedes disclosed the Defect, Ms. Spagnole-Negron would not have purchased her Class Vehicle or would have paid significantly less for it.

*Plaintiff Fred Robanser (California)*

41.     Plaintiff Fred Robanser resides in Redwood City, California.

42.     Mr. Robanser owns a 2020 Mercedes S560, which he purchased from Autobahn Motors in Belmont, California in February 2021.

43.     Mr. Robanser's Class Vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by Mercedes, and bears the Vehicle Identification No. WDDUG8DB6LA517198.

44.     Prior to this purchase, Mr. Robanser was not advised of the Defect and tendency, known by Mercedes, of his vehicle to become inoperable at least twice because of the Electrical System Defect.

45.     Plaintiff Fred Robanser never received any of his vehicle warranty materials until after delivery of his vehicle. Specifically, Plaintiff Fred Robanser

was only first apprised of the terms of the terms of the vehicle warranty in a cellophane-plastic-sealed warranty booklet that accompanied his vehicle after accepting delivery of the vehicle. Plaintiff Fred Robanser was unaware of the specific terms of the vehicle warranty other than generalized information that all new Mercedes-Benz vehicles are covered by a 4-year/50,000-mile warranty.

46.     The day after his purchase, Mr. Robanser's Class Vehicle failed to start in a parking lot, causing him to call AAA to jump start it.

47.     Mr. Robanser took his Class Vehicle to Autobahn Motors for the failure to start and instead of investigating the defect, he was told to turn off all electronics and to run or drive the vehicle for an hour.

48.     Mr. Robanser has lost confidence in the vehicle and is constantly in fear of it failing again since he was left standed in two lots by this vehicle.

49.     Three weeks later, Mr. Robanser's class vehicle failed to start in another parking lot, causing him to call AAA to jump start it again.

50.     Had Mercedes disclosed the Defect, Mr. Robanser would not have purchased his Class Vehicle or would have paid significantly less for it.

51.     Mr. Robanser now lives in fear that the battery in his Class Vehicle will fail on him at any time.

*Plaintiff Susanna Melanson (Connecticut)*

52.     Plaintiff Susanna Melanson resides in Bristol, Connecticut.

53.     Ms. Melanson owns a 2017 Mercedes CLA230, which she purchased new from New Country Mercedes Benz in 2017.

54.     Ms. Melanson's Class Vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by Mercedes, and bears the Vehicle Identification No. WDDSJ4GBXHN500790.

55.     Prior to this purchase, Ms. Melanson was not advised of the Defect and tendency, known by Mercedes, of her vehicle to become inoperable no less than seven times because of the Electrical System Defect and had to tow the vehicle to a repair shop several times.

56.     Plaintiff Susanna Melanson never received any of her vehicle warranty materials until after delivery of her vehicle. Specifically, Plaintiff Susanna Melanson was only first apprised of the terms of the vehicle warranty in a cellophane-plastic-sealed warranty booklet that accompanied her vehicle after accepting delivery of the vehicle.  Plaintiff Susanna Melanson was unaware of the specific terms of the vehicle warranty other than generalized information that all new Mercedes-Benz vehicles are covered by a 4-year/50,000-mile warranty.

57.     Ms. Melanson has had to replace the battery in her vehicle at least three times since the initial vehicle purchase.

58.     Between uses of her vehicle, Ms. Melanson has to keep the vehicle plugged into a charger in order to prevent the battery from becoming depleted.

59.     To date, Ms. Melanson has spent approximately $910.50 for multiple batteries, tows, diagnostics, battery charger, and labor due to the Electrical System Defect.

60.     Had Mercedes disclosed the Defect, Ms. Melanson would not have purchased her Class Vehicle or would have paid significantly less for it.

61.     Ms. Melanson's vehicle has also suffered diminution in value due to the Defect and the resulting loss in her vehicle's resale value.

_Plaintiff Denise Salles (California)_

62.     Plaintiff Denise Salles resides in Mountain View, California.

63.     Ms. Salles owns a 2015 Mercedes ML350, which she purchased certified preowned still within the original factory warranty period from a Mercedes Authorized Dealer, Autobahn Motors in Belmont, California in 2018.

64.     Ms. Salles's Class Vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by Mercedes, and bears the Vehicle Identification No. 4JGDA5HB3FA593787.

65.     Prior to this purchase, Ms. Salles was not advised of the Defect and tendency, known by Mercedes, of her vehicle to become inoperable no less than two times because of the Electrical System Defect.

66.     Plaintiff Denise Salles never received any of her vehicle warranty materials until after delivery of her vehicle. Specifically, Ms. Salles was only first apprised of the terms of the vehicle warranty in a warranty booklet that accompanied her vehicle after accepting delivery of the vehicle. Plaintiff Denise Salles was unaware of the specific terms of the vehicle warranty other than generalized information that all new Mercedes-Benz vehicles are covered by a 4-year/50,000-mile warranty.

67.     Ms. Salles has had to replace the battery in her vehicle two times since the initial vehicle purchase.

68.     To date, Ms. Salles has spent approximately $1,060.00 for multiple batteries, labor, and rental car expense due to the Electrical System Defect.

69.     Had Mercedes disclosed the Defect, Ms. Salles would not have purchased her Class Vehicle or would have paid significantly less for it.

70.     Ms. Salles's vehicle has also suffered diminution in value due to the Defect and the resulting loss in her vehicle's resale value.

### ***DEFENDANTS***

*Defendant Mercedes-Benz USA, LLC*

71.    Defendant Mercedes-Benz USA, LLC ("MBUSA") is a Delaware corporation with its principal place of business in Atlanta, Georgia.

72.    MBUSA is a wholly owned subsidiary of Mercedes-Benz Group AG f/k/a Daimler AG.

73.    At all times relevant herein, MBUSA has been and has acted as an agent of Daimler and subject to Daimler's control.

74.    At all times relevant herein, MBUSA (itself and through its related entities) engaged in the business of marketing, warranting, distributing, selling, leasing, and servicing automobiles, including the Class Vehicles, throughout the United States.

*Defendant Mercedes-Benz Group AG f/k/a Daimler AG*

75.    Defendant Mercedes-Benz Group AG f/k/a Daimler AG is a German corporation with its principal place of business in Stuttgart, Germany.

76.    At all times relevant herein, Daimler (itself and through its related entities) engaged in the business of designing and manufacturing the Class Vehicles.

77.    Upon information and belief, Daimler was solely responsible for designing the Class Vehicles, including their defective Electrical System, and therefore is an essential party to this action concerning a design defect in the Class Vehicles' Electrical System.

78.    Upon information and belief, Daimler has, and at all relevant times had, the contractual right to exercise, and in practice has exercised, control over MBUSA's work, including but not limited to the design of Class Vehicles, the manner of Class Vehicles' marketing, the scope of written warranties, the scope of

repairs in practice to be covered under warranty, and representations made and facts withheld from consumers and the public about the Electrical System Defect.

79.     Daimler has held MBUSA out as its agent for all purposes in the United States, but especially for sales and marketing of Class Vehicles and for ongoing management of relationships with purchasers and lessees of Class Vehicles.  It established MBUSA as its wholly-owned subsidiary company.  It named MBUSA with its official "Mercedes-Benz" title.  It provided MBUSA with marketing and technical materials avoiding any distinction between MBUSA and Daimler, and instead representing MBUSA as nothing less than Daimler's presence in the United States for purposes of selling and leasing "Mercedes-Benz" brand vehicles and providing related services.

80.     Based on the foregoing actions, representations, and omissions, Plaintiffs and Class Members justifiably relied on MBUSA's representations regarding the Class Vehicles that were the responsibility of Daimler in, for example, Daimler's design of the Class Vehicles, and were injured because of their purchase or lease of defective Class Vehicles.

## III.    JURISDICTION

*Subject-matter jurisdiction*

81.     This Court has federal question jurisdiction over this action under 28 U.S.C. § 1331 because this case includes claims arising under federal law.

82.     Additionally, the elements of subject matter jurisdiction pursuant to 28 U.S.C. §1332(d) and the Class Action Fairness Act are present: the amount in controversy exceeds $5,000,000, and Defendant Daimler is a citizen of a foreign country, and is thus diverse from Plaintiffs and Class Members.  Pursuant to LR23.1(A)(2)(f), Plaintiffs, upon information and belief, believe the damages are

in excess of $5,000,000 because hundreds of thousands of class vehicles nationwide are affected, *see* ¶165, *infra*, that will require remedying the Electrical System Defect. *See* ¶¶95–129, *infra*.

83.    This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. §1367(a).

*Personal jurisdiction: MBUSA*

84.    This Court has personal jurisdiction over MBUSA because MBUSA is authorized to do business in this District, conducts substantial business in the District, has its headquarters and principal place of business in the District, is at home in the District, and some of the actions giving rise to the complaint took place in the District.  Each of these facts independently, but also all of these facts together, are sufficient to render the exercise of jurisdiction by this Court over MBUSA permissible under traditional notions of fair play and substantial justice.

85.    This Court also has personal jurisdiction over MBUSA under 18 U.S.C. § 1965 because MBUSA is found in, has an agent in, or transacts business in this District.

*Personal jurisdiction: Daimler*

86.    This Court has personal jurisdiction over Daimler because Daimler has continuous and systematic general business contacts in this District.

87.    By headquartering its wholly owned subsidiary MBUSA in this District, and using MBUSA as its channel for marketing, distributing, warranting, selling and leasing the Daimler-designed Class Vehicles in the District and the United States, Daimler itself has deliberately taken affirmative steps to make Daimler-designed vehicles available to consumers in the District and the rest of Georgia, including Plaintiffs and Class Members; created continuing obligations

between Daimler and residents of the District; and purposefully availed itself of the benefits and protections of conducting business in the District.

88.     Daimler employees and representatives regularly visit MBUSA, which has its headquarters in Atlanta, thereby continuously conducting business in this District.

89.     Further, Daimler's wholly owned subsidiary MBUSA is at home in this District, and MBUSA's contacts in this District can be attributed to Daimler.

90.     Plaintiffs' claims here arise out of Daimler's contacts with this District, particularly in that Plaintiffs could not even have purchased/leased their Class Vehicles if not for Daimler's intentional acts of designing the Class Vehicles (including their defective Electrical Systems) and exporting them for sale to customers in this District and the rest of the United States, including Plaintiffs and Class Members.

91.     These constitute sufficient bases to render the exercise of jurisdiction over Daimler by this Court permissible under traditional notions of fair play and substantial justice.

**IV.   VENUE**

92.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendants, as corporations, are deemed to reside in any judicial district in which they are subject to personal jurisdiction.

93.     Additionally, Defendants transact business within the District, MBUSA has its principal place of business in this District, and some of the events establishing the claims occurred in this District.

## V.     APPLICABLE LAW

94.     Plaintiffs seek damages and equitable relief on behalf of themselves and the Class Members, under federal law as to the federal-law claims, and under Georgia law, or, in the alternative, under California, New Jersey, and Conneticutlaw as to the state-law claims.

## VI.    FACTUAL ALLEGATIONS

### A.     The Electrical System Defect.

95.     The battery is an essential component of any vehicle: it provides the energy to allow the engine to start and provides power for the vehicle components including vital safety systems. In some models it helps power the vehicle.

96.     The automobile electrical system traditionally consists of a 12-volt battery, a starter that spins the engine to start, and an alternator that charges the battery.

97.     Wiring connects the battery to electical components that operate various functions within the vehicle. Many of these components "communicate" with one another through a common communications bus (CAN-BUS), led by computer modules that communicate and/or control various sensors and smaller Signal Acquisition Modules throughout the vehicle to distribute power and activate and deactivate components, and monitor and send/receive data from switches, sensors, and controllers. Safety systems such as airbag, ABS, brake controllers, and lighting are connected to the electical system and controlled by the CAN-BUS.

98.     In late model "mild hybrid" vehicles, the electical system adds a 48-volt battery (in addition to the 12-volt battery) and the starter and alternator are integrated into one unit that "boosts" the engine output as well as starts the engine. This system also electrifies the steering system as well as water pump which means

that a sudden failure of the system can render the vehicle without steering assist and cause the engine to overheat.

99.     The electrical systems in Mercedes 12-volt "standard" and 48-volt "mild hybrid" are defective in that they are not properly designed to operate reliably and as intended and expected under normal use and conditions (the aforementioned "Electrical System Defect").

100.    In the 12-volt Vehicles, this Defect manifests in unexpected battery drain while parked, which leaves motorists stranded in parking lots or often unfamiliar or dangerous circumstances. So far, Mercedes has attempted – and failed – to address the Defect in the 12-volt Vehicles via TSBs LI54.15-P-070802, LI42.47-P-069817, LI54.10-P-066344, LI82.85-P-066086, LI82-95-P-056655, LI27.00-P-072627, LI54.10-P-064762, LI54.10-P-066942, and LI54.10-P-071596.

101.    In the 48-volt Vehicles, the Defect manifests with unexpected battery drain while parked as well as the Vehicles entering "limp mode[1]" during operation. So far, Mercedes has attempted – and failed – to address the Defect in the 48-volt Vehicles via TSB LI54.10-P-069698.

### B.    Mercedes Knew of the Electrical System Defect Prior to Sale or Lease of the Class Vehicles.

102.    On information and belief, prior to the manufacture and sale of the Class Vehicles, Mercedes knew of the Electrical System Defect through, or as evidenced by, sources such as pre-release design and testing information; lemon law panel decisions; technical service bulletins; service center data; replacement

---

[1] Limp mode is a substantially reduced power and functionality state that substantially restricts the vehicle's availbity to accelerate, limits performance, and available features. This is important because in the 48-volt Vehicles, the engine coolant pump is electric and thus an electical failure can result in engine overheating.

2378091.14

part sales data; early consumer complaints made directly to Mercedes, collected by NHTSA ODI, and/or posted on public online vehicle owner forums; testing done, including testing in response to consumer complaints; aggregate data from Mercedes dealers; and other internal sources unavailable to Plaintiffs without discovery.

### C.     Pre-Release Design And Testing

103.   Mercedes also knew or should have known about the Electrical System Defect because of the large number of Electrical System diagnostics, services, repairs, and battery replacements made during the Class Vehicles' warranty periods.

104.   During the pre-release process of designing, manufacturing, engineering, and testing the Class Vehicles, Mercedes necessarily would have gained comprehensive and exclusive knowledge about the Class Vehicle's Electrical System, particularly the basic engineering principles behind the construction and function of the Systems and the expected conditions and uses the Systems would encounter in ordinary customer service.

105.   An adequate pre-release analysis of the design, engineering, and manufacture of the Electrical Systems in the Class Vehicles would have revealed that the Class Vehicles suffered from an Electrical System Defect that caused the parasitic drain of the vehicle's battery.

### D.     Mercedes Knew of the Electrical System Defect From Its Own Service Center Data.

106.   Mercedes also knew or should have known about the Electrical System Defect because of the large number of Electrical System diagnostics, services, repairs, and battery replacements made during the Class Vehicles' warranty periods.

- 17 -

107.   Upon information and belief, Mercedes collects, reviews, and analyzes detailed information about repairs made on vehicles still under warranty at its dealerships and service centers, including the type and frequency of such repairs.  Complete data on such repairs is exclusively within Mercedes control and unavailable to Plaintiffs without discovery.

### E.   Mercedes Knew of the Electrical System Defect Based on Its Receipt of Large Numbers of Orders for Replacement Batteries.

108.   Upon information and belief, Mercedes also knew or should have known about the Electrical System Defect because of the higher-than-expected number of replacement batteries ordered from Mercedes, which should have alerted Mercedes that the Electrical System Defect existed and affected a wide range of its vehicles.

109.   Upon information and belief, Mercedes-authorized service centers use replacement parts that they order directly from Mercedes.  Therefore Mercedes would have detailed and accurate data regarding the number and frequency of replacement part orders, including replacement batteries. The ongoing high sales and warranty claims of replacement batteries was (or should have been) known to Mercedes, and alerted Mercedes that its Electrical Systems were defective and rendering Class Vehicles' inoperable.

### F.   Mercedes Knew of the Electrical System Defect from Its Own Technical Service Bulletins.

110.   Mercedes knowledge of the Electrical System Defect is also evident in "Technical Service Bulletins" (TSBs) issued by Mercedes concerning battery drains and failures.

111.   On July 12, 2013, Mercedes issued Technical Service Bulletin "LI82-95-P-056655" titled "Battery drain bus keepawake detected - mbrace control unit

causes bus keepawake" which stated, "Customer experiences low battery conditions, resulting in jump starts, and eventually requiring battery replacement.", stating that low battery conditions can cause battery replacement and states a potential cause as the communication module trying to update and keeping the vehicle BUS awake, but states if the current draw continues to notify Mercedes.

112.   On July 31, 2017, Mercedes issued Technical Service Bulletin "LI82.85-P-066086" titled "Starter battery discharged due to excessively high quiescent current" which stated, "Engine start not possible because battery voltage too low.," and identifies that a Communication Module can continue to draw power and discharge the battery to the point where the vehicle will not start.

113.   On October 3, 2017 and November 26, 2018, Mercedes issued Technical Service Bulletin "LI54.10-P-064762," titled "*Battery discharged, vehicle does not start - Event code U116000'A bus keepawake event has been detected' is logged in the quick test*," which stated that "*battery discharged, vehicle does not start.*" which acknowledges states that various device crashes, including the Keyless-GO, electronic ignition lock control unit, operating the warning lights, the Electonic Stability Program, or even "*faulty software*" could cause the battery failure.

114.   On October 26, 2017, Mercedes issued Technical Service Bulletin "LI54.10-P-066344" titled "Vehicle does not start, battery discharged." which stated "Vehicle does not start, battery discharged. The on-board electrical system data indicates a high discharge in the engine-off cycle; "CAN bus awake unusually long", "Charge balance UNUSUAL"" it identifies two potential causes for high energy usage with the engine off and asks the dealer to open a case with Mercedes if the stated fixes don't work.

115.   On May 10, 2018, Mercedes issued Technical Service Bulletin "LI54.10-P-066942" titled "*Discharged battery; vehicle does not start!! Model series 177 only!!,*" which stated "*battery discharged; vehicle does not start,*" and "*Cause: Under analysis,*" because Mercedes did not know the cause or have a solution for the problem.

116.   On August 12, 2019, Mercedes issued Technical Service Bulletin "LI42.47-P-069817" titled "Message in instrument cluster "Unavailable! - ESP - Service Required"" which stated "engine start is not possible on the first attempt" and "Cause: Possibly ESP control unit software," so Mercedes was not certain as to the cause of the no-start condition.

117.   On January 24, 2020, Mercedes issued Technical Service Bulletin "LI54.15-P-070802" titled "*Discharging or dead batteries*" which stated "*No start, dead battery, Charge Battery in display, or B214B72 the output for switch "No-Load Current ON" has a mal-function in Quick Test.*" and "*Cause: Root cause still under investigation.*"

118.   On August 7, 2020, Mercedes issued Technical Service Bulletin "LI54.10-P-071596" titled "Vehicle does not start / Vehicle cannot be unlocked - starter battery may be discharged" stated that "Vehicle does not start / Vehicle cannot be unlocked" because various different onboard modules could be keeping the CAN bus awake and drawing current.

119.   On March 16, 2021, Mercedes issued Technical Service Bulletin "LI27.00-P-072627" titled "Fault in 12 V interlock circuit" which stated "due to loss of contact at the 12 V connector coupling of the interlock circuit it might not be possible to start the vehicle again" states that the pins in a connector coupling can cause faults in the high voltage battery and electronics control unit

120.    On December 15, 2021, Mercedes issued Technical Service Bulletin "LI54.10-P-069698" titled "Functional impairment of 48 V on-board electrical system" stated that "Various causes are possible. The faults listed in the various causes do not all have to be present at all times. Some of these complaints may overlap" and lists faults as, "1. No start 2. Yellow or red instrument cluster message for 48 V on-board electrical system battery 3. Limp home mode, overheating, A/C not blowing cold, or loss of acceleration," and cites five separate causes including software failure, hardware failure, cooling element failure, and battery abnormality causing the battery to disconnect itself.

G.    **Mercedes Knew of the Electrical System Defect from Class Member Complaints Made Directly to Mercedes and/or Collected by NHTSA's Office of Defect Investigations.**

121.    Mercedes also knew or should have known about the Electrical System Defect because numerous consumer complaints regarding failures of the Electrical System were made directly to Mercedes. The large number of complaints, and the consistency of their descriptions alerted or should have alerted Mercedes to this serious defect affecting a wide range of its vehicles.

122.    Federal law requires automakers like Mercedes to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement, backed by criminal penalties for violation, of confidential disclosure of defects by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

123.    Thus, automakers should and do monitor NHTSA databases for consumer complaints regarding their automobiles as part of the automakers ongoing obligation to identify potential defects in their vehicles, including design-related defects, such as Electrical System failures.

2378091.14

124.   From its monitoring of the NHTSA databases, Mercedes knew or should have known of the many complaints about Electrical System failures logged by NHTSA ODI, and the content, consistency, and large number of those complaints alerted, or should have alerted, Mercedes to the Electrical System Defect.

125.   Further, the full universe of complaints made directly to Mercedes about the Electrical System Defect is information presently in the exclusive custody and control of Mercedes and is not yet available to Plaintiffs prior to discovery.  However, upon information and belief, many Class Vehicle owners complained directly to Mercedes and Mercedes dealerships about the repeated Electrical System failures their vehicles experienced.  For example, some instances of these complaints are described in Class Vehicle owners'/lessees' complaints logged with ODI and online vehicle owner forums:[2]

- "The vehicle issued a "48v battery malfunction" and the car warned me not to drive the vehicle under any circumstance.  This was while driving at 55 mph on a country road.  The dealer I bought the car from had 3 other cars brought in for the same issue.  The dealer my car was towed to said they just had one with the same issue come in.  Based on my reading, this is a serious issue and it appears that changing the battery does not correct the issue.  I was transporting my entire family at the time.  The thought of not being able to break when traveling at high speeds is terrifying.  Seems to be a widespread issue on the newer cars. Mine is only a year old." NHTSA ID No. 11421337, date of incident January 2, 2014.

- We purchased a new 2020 mercedes benz gls 450 in october 2019 from the oakland dealership and shipped the car to hawaii.  The

---

[2] For these and other customer complaints quoted in this Complaint, quotes are left as written, except that those originally in all-caps have been changed to sentence case. Due to the sheer number of typographical and grammatical errors, [sic] notation has not been used. Any emphasis has been added, unless otherwise noted.

vehicle is now 117 months old and has about 4100 miles. … On march 7, 2021 we experienced a "48 volt battery malfunction' which left our car disabled on the side of an uphill major roadway.  There was no warning just a sudden extreme loss of power, supplemental systems such as the ac deactivated, warning lights flashed and our vehicle coasted to the side of the road.  I believe the brake system was also diminished by the loss of electrical boost.  After a while we were able to restart the vehicle and began to 'limp home'. The vehicle was not able to accelerate and we experienced 'over heating' warnings ( in red ) and had to stop the vehicle to cool the engine.  We arranged for mercedes benz roadside assistance to tow the vehicle to the kona mercedes benz service centre the next day.  Yellow engine warning lights remained on when the vehicle was placed on the tow vehicle….After several days we learned that the cause of the malfunction was not found and we were told to 'monitor the situation'.  I attached the service report which describes the extensive investigative work completed by the kona mercedes service centre.  We are very concerned this malfunction is a safety related issue and needs to be escalated.  Sudden unexpected loss of power creates extremely dangerous situations. NHTSA ID No. 11402929, date of incident March 7, 2021.

126.   As the above sampling of complaints shows, Class Vehicle owners have been vocal in complaining directly to Mercedes about the Electrical System Defect, and the number and consistency of their complaints should have alerted Mercedes to the existence of the Electrical System Defect.

### H.   Mercedes Knew of the Electrical System Defect Based on Class Member Complaints on Public Online Forums.

127.   In addition to complaints made directly to Mercedes and collected by NHTSA ODI, many Class Vehicle owners posted complaints about the Electrical System Defect on public online vehicle owner forums.  The following is a small sampling of such complaints:

- "i have a c320 and started having battery drain problems in december last yr.  i had to finally change my battery.  but the problem still percists." Posted on www.mercedesforum.com in January 2008.

- Dead Battery again - 2019- garage parked my 2016 GLE350 4MATIC and locked it.  Was gone for a a week- came back and the car wouldn't start.  Battery was completely flat.  Had to call MB roadside and have my battery replaced for $300 out of pocket cost.  MB tech says not normal for 4 year old battery to die.  The dealer kept the car overnight to check for voltage drain etc. No issues found. NOV 2020 - 2016 GLE350 4Matic, brought my vehicle in to have the rims repaired.  Dealer had the car for 5 days- parked in their lot.  Went to pick up car and the mechanic couldn't start it.  Had to jump it.  I resisted to pick up the car and the dealer agreed to kelp it and trouble shooting it to find out why a 1 year old MB battery would die in a parked vehicle.  JAN-2020- my wife's 2017 GLC300 was locked and parked for 5 days.  Came back and battery was totally flat.  Mercedes replaced under warranty.
  We always check the interior and exterior of the vehicle before locking it and leaving it parked in the garage.  Too many coincidences for these MB batteries to go totally flat in about a week.  This is not normal.  Has anyone else experienced this ?
  We live in a warm climate state.  Weird, we've never had problems with batteries in previous vehicles.  We are uncomfortable to leave our vehicles parked for a week now.  It's such a hassle to deal with dead batteries.  Posted on mbworld.org in November 2020.

- "I have a Mercedes E-320 2004. I have a new battery and alternator works fine. After I drive my car for a while- the battery will drain rapidly overnight. I had a mechanic check for a draw and he found none. Now here is the weird thing. I have installed a cut off switch to the negative side of battery. If after I drive my car and switch off the battery and quickly reconnect it-the draw stops and does not drain battery ever. If after driving again and I don't do this it will rapidly discharge again. Any ideas please?"  Posted on www.community.cartalk.com in February 2019.

- "I have a 2016 W212R E550 Sedan. … After changing both the primary battery in the hood and the auxiliary battery under the driver side as well as the fuse, the car seemed to be perfectly fine but the car's battery dies every other day since then.  Alternator is perfect as well, no faults in the system either.  Does anyone know what the problem could be or have experienced this before?  Also, when boosting the car now, you need to let it sit to a proper connection or jumper for 5-10 minutes in order to start it or else it won't start.  Lights and other functions turn on but the car doesn't have enough power to turn on.  Posted on mbworld.org in March

- 24 -

2020.

- "Okay, so first of all... my 2014 350 drains the battery at (what I feel) is an accelerated rate. If it sits for more than three days, the battery will drain to the point of not starting. I've had MB check the battery and they claim it's A-OK." Posted on www.slkworld.com in February 2017

- "For some reason when my car sits for more than 2 days the battery is dead. Everything in the car is shut off but the battery keeps dying. Any thoughts? Oh yea both batteries are less than 4 months old." Posted on mbworld.org in December 2009.

- "I have this problem for a long time now if the if the car seats for 4 o 5 days the battery will go dead.  Now the only way that that won't happen is the battery if brand new, but after 5 or 6 month this will happen."  Posted on www.benzworld.org in April 2021.

- "My battery keeps draining.  I've replaced 2 batteries now." Posted on www.benzworld.org in January 2010.

- "This car has had a battery drain "fault" since bought new: 2003. MB agents over the years have INSISTED it was always the battery - till I put my foot down. ......5 batteries in 8 years?" Posted www.benzworld.org in March 2014.

- "Relatively quick battery drain.  The battery checks out fine; but when connected it drains in two or three days of not driving." Posted on www.cargurus.com in May 2019.

- "Low Milage [8000] car, Battery drains to nothing. three times within a month. Can't start car." Posted on www.repairpal.com in January 2011.

- "Got a new 2020 GLE350 about 3 months ago About a week ago, it would not start, bunch of lights on the dash, would not turn over MB sent out a service and they jumped the car It ran for another week, and then just died again.  We had it towed to MB this time Already checked the Battery and Alternator all are fine Any idea what is causing the battery drain" Posted on mbworld.org/forums/ in June 2020.

- "I have been having problems with my E class.  for the past month there has been a parasitic drain it has been in and out of the dealership but it still keeps draining and its unable to start.  Its

temperamental and happens at random times."  Posted on mbworld.com in February 2021.

- "Okay I got an update.  No resolution and more annoyed than before.  I drop the car off, it has a 12V battery message on the dash I get a call from the service advisor and they're like yeah it's odd we will keep it over night and check it out.  So they run their tests battery checks out good 😊 her suggestion is to drive the car more ( I drive it everyday 2hrs plus ) or get a trickle charger ( sure, okay if I let it sit for a week.  It's not an EV I shouldn't have to plug it in over the weekend )"  Posted on mbworld.org/forums/ in February 2022.

As shown by this small sampling of complaints from websites such as www.mbworld.com, www.benzworld.org, www.repairpal.com, www.community.cartalk.com, www.cargurus.com, www.slkworld.com, and www.mercedesforum.com, consumers have been vocal in complaining about the Electrical System Defect and the damage being caused by the Defect.  A multi-billion dollar vehicle design and manufacturing company such as Mercedes undoubtedly tracks and has tracked such sites and was aware or should reasonably have been aware of the Electrical System Defect in the Class Vehicles.

## I.      Mercedes Knew of the Electrical System Defect Based on Lemon Law Decisions.

128.    In *Lisa Mayer v. Mercedes-Benz USA, LLC*, June 24, 2013, Florida New Motor Vehicle Arbitration Board # 2012-0058-STP, Shop Foreman at Mercedes Benz of Sarasota, Abel Grijalva in testifying for Mercedes admitted that "short timespan" drains "weaken the battery significantly," stating, "the battery would not maintain a proper charge anymore, you can only discharge so many times and recharge it so many times so once it's reached so many discharges it wont recharge to the proper level," he also stated that, "Every instance of battery drain requires an extended ." recharge period," "in these occurances you have

weakened the battery." He also stated that a battery can be discharged and still "start up" but then fail shortly later. Thus, battery drain events are a downward cycle towards more failures.

129.   In *Chad Prandi v. Mercedes-Benz USA, LLC*, June 24, 2013, Florida New Motor Vehicle Arbitration Board # 2013-0024/WPB, the Board ordered Mercedes replace or repurchase the 2011 E550 that exhibited low battery no start conditions under Lemon Law, finding that, "The evidence established that the ongoing problem with the battery dying substantially impairs the use, value and safety of the vehicle, and the intermittent failure of the air suspension system substantially impaired the use, value and safety of the vehicle, thereby constituting one or more nonconformities as defined by the statute and the applicable rule. The Manufacturer's assertion to the contrary is rejected." In that case, "Todd Banks, Service Director at Mercedes-Benz of Fort Lauderdale, testified "something" must be drawing from the battery, but he never found an electrical problem to explain why the battery keeps dying. He replaced the battery sensor as a preventative measure, but the battery still died afterwards. Mr. Banks agreed it was not common to replace or jump start a battery so many times in two years." As such, Mercedes was on notice that this is a substantial impairment and issue with its vehicles its Authorized Service Centers are unable to resolve.

130.   In *Hisham Boulhimez v. Mercedes-Benz USA, LLC*, January 2021, Florida New Motor Vehicle Arbitration Board # 2020-0413/WPB, Mercedes reached a settlement prior to formal hearing with a consumer seeking Lemon Law repurchase of a 2019 C63 due to low battery no start conditions after two attempts to repair the issue took 35 days and which an initial repair resulted in another failure to start the same day it was deemed repaired. The dealer found battery

drain by the Electronic Ignition Switch. As such, Mercedes was on notice that this is a substantial impairment and frustrating issue to resolve.

\*          \*          \*

131.   In sum, as early as 2003, and likely earlier, Mercedes was aware of the Electrical System Defect, should have been aware of the Electrical System Defect through the exercise of reasonable care, and/or was negligent in failing to be aware of the Electrical System Defect, based on, among others, the following sources:

(a)   Pre-release design and testing;

(b)   Numerous and consistent vehicle owner complaints made directly to Mercedes about the Electrical System Defect;

(c)   Detailed data gathered by Mercedes about large number of Electrical System Defect servicings;

(d)   Mercedes service center employees' familiarity with and knowledge of the Electrical System Defect;

(e)   Knowledge Mercedes had of the large number of replacement batteries ordered from Mercedes;

(f)   Technical Service Bulletins evincing knowledge of battery failures issued by Mercedes to its dealerships and service centers;

(g)   Numerous and consistent vehicle owner complaints collected by NHTSA ODI about the Electrical System Defect; and

(h)   Numerous and consistent vehicle owner complaints made on online vehicle owner forums.

132.   Moreover, the large number and consistency of Class Member complaints describing battery failures underscores the fact that Class Members

- 28 -

considered the Electrical System Defect to be a material issue to the reasonable consumer.

## VII.  APPLICABLE WARRANTIES

133.  Mercedes sold Class Vehicles with a "New Vehicle Limited Warranty" which included, among other warranties, protections against DEFECTS:

> Mercedes-Benz USA, LLC (MBUSA) warrants to the original and each subsequent owner of a new Mercedes-Benz vehicle that any authorized Mercedes-Benz Dealership will make any repairs or replacements necessary, to correct defects in material or workmanship, but not design, arising during the warranty period. …
>
> This warranty is for 48 months or 50,000 miles, whichever occurs first." …Warranty repairs will be made at no charge for parts and labor.[3]

134.  As outlined above, any caveats, limitations, or "asterisks" to such coverage were never disclosed to Plaintiffs.

135.  Plaintiffs and Class Members could not assent to any disclaimers or limitations on its new vehicle warranty because Mercedes' customers (Plaintiffs and Class Members) only received such terms after the delivery of Mercedes' vehicles.

136.  Mercedes prevents Plaintiffs and Class Members from assenting to any disclaimers or limitations on its new vehicle warranties by including such terms in a cellophane-plastic-sealed warranty booklet that is only presented to Plaintiffs and Class Members until after the vehicle delivery.

---

[3] A true and correct copy of the 2020 Service and Warranty Booklet is attached as Exhibit A.

137.   Mercedes post-sale-and-delivery disclaimers and limitations on its vehicle warranties are ineffectual because such terms go to the essence of Plaintiffs and Class Members' vehicle sale or lease contracts.

138.   Mercedes New Vehicle Limited Warranty extends coverage to the 48V system battery, as part of the vehicle emission control system:

> BATTERY COVERAGE: Mercedes-Benz USA, LLC ("MBUSA") warrants the high voltage battery in your vehicle to the original and each subsequent owner for any repairs or replacements necessary to correct defects in material or workmanship, but not design, relating to the battery which may arise after the expiration of the Vehicle's Warranty.

139.   Based on Plaintiffs' experiences and reports from other consumers, Mercedes refuses to cover the nonpermanent "fixes" under warranty, and instead requires Class Members pay out of pocket for these nonpermanent "fixes" for the Electrical System Defect even if Class Members' vehicle remained under warranty at the time.

## VIII. MERCEDES MARKETING AND CONCEALMENT

140.   Upon information and belief, Mercedes knowingly manufactured and sold the Class Vehicles with the Electrical System Defect, while willfully concealing the true inferior quality and sub-standard performance of the Class Vehicles' electrical system.

141.   Mercedes directly markets the Class Vehicles to consumers via extensive nationwide, multimedia advertising campaigns on television, the Internet, billboards, print publications, mailings, and through other mass media.

2378091.14

142.   Mercedes marketing material describes the various Class Vehicles as "state-of-the-art," "fine craftsmanship," and "the most advanced vehicles on the road." Mercedes slogan for its vehicles is "the best or nothing."

143.   In particular Mercedes describes its vehicles as "technologically advanced" and "fine-tuned" to provide "unparalleled performance" that "live up to exacting requirements and relentless excellence" and that "show no weakness."

144.   Although Mercedes knew of its vehicles' electical systems' propensity to cause unexpected battery drain and failure, it refused to notify Plaintiffs and Class Members of this prior to their vehicle purchases of this defect.

145.   Mercedes marketing materials and manuals advertised and described its vehicles as, "A Mercedes-Benz SUV likes to overachieve, outperform, and overdeliver.," "What you'll have a really hard time finding is anything that's been overlooked by its engineers, designers and craftspeople.," "It takes driving convenience and passenger comfort into a new generation—along with confidence, connectivity and capability," and "Mercedes-Benz is also legendary for producing automobiles of extraordinary durability and longevity."

146.   It also promoted videos stating its vehicles are "engineering excellence" and "an automotive masterpiece." This led Plaintiffs and Class Members to form a reasonable belief and expectation that their vehicle electrical systems would function reliably to start and power their Vehicles and caused the reasonable consumer not to expect that the vehicle would fail to start and unexpectedly and them stranded.

147.   In practice, the Class Vehicles are not of the quality and reliability as Mercedes' marketing represents. Mercedes concealed the fact that its Class

Vehicles, which supposedly are "the most advanced vehicles on the road," are instead not even reliable enough to start after a night in the driveway or garage.

148.   Plaintiffs and Class Members were exposed to Mercedes' long-term, national, multimedia marketing campaign touting the supposed reliability and quality of the Class Vehicles, and Class Members justifiably made their decisions to purchase/lease their Class Vehicles based on Mercedes' misleading marketing that concealed the true, defective nature of the Class Vehicles' Electrical System.

149.   Further, Mercedes knowingly misled Class Members about the true, defective nature of the Class Vehicles. As detailed above, upon information and belief, Mercedes has been aware of the Electrical System Defect since at least 2003, and likely earlier, through pre-release design and testing; technical service bulletins, the high number of Electrical System servicings and replacements, and the numerous and consistent complaints about the Electrical System Defect made directly to Mercedes, collected by NHTSA and posted in public online forums.

150.   Despite Mercedes' knowledge of the Defect, Mercedes told Class Members who called its customer service about the Electrical System Defect that their batteries and vehicles were fine, and made Class Members pay for temporary "band aid" diagnostic and repair measures out-of-pocket.

151.   In sum, Mercedes has actively concealed the existence and nature of the Electrical System Defect from Class Members since at least 2003 despite its knowledge of the existence and pervasiveness of the Electrical System Defect, and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles. Specifically, Mercedes has:

(a)     Failed to disclose, at and after the time of purchase, lease, and/or service, any and all known material defects of the Class Vehicles, including the Electrical System Defect;

(b)     Failed to disclose, at and after the time of purchase, lease, and/or service, that the Class Vehicles' Electrical Systems were defective and not fit for their intended purposes;

(c)     Failed to disclose, and actively concealed, the fact that the Class Vehicles' Electrical Systems were defective, despite the fact that Mercedes learned of the Electrical System Defect as early as 2003, and likely even earlier;

(d)     Failed to disclose, and actively concealed, the existence and pervasiveness of the Electrical System Defect even when directly asked about it by Class Members during communications with Mercedes, Mercedes Customer Assistance, Mercedes dealerships, and Mercedes service centers;

(e)     Actively concealed the Electrical System Defect by forcing Class Members to bear the cost of temporary measures to address the battery failures, while other dealerships replaced batteries at no charge to the owner;

152.   By engaging in the conduct described above, Mercedes has concealed, and continues to conceal, the Electrical System Defect from Class Members. If Class Members had knowledge of the information Mercedes concealed, they would not have bought or leased the Class Vehicles, or would have paid less for them.

## IX.    FRAUDULENT CONCEALMENT ALLEGATIONS

153.   Absent discovery, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Mercedes responsible for disseminating false and misleading

marketing materials and information regarding the Class Vehicles. Mercedes necessarily is in possession of or has access to all of this information.

154.   Plaintiffs' claims arise out of Mercedes' fraudulent concealment of the Electrical System Defect that caused battery failures and numerous battery replacements, and its representations about the reliability of the Class Vehicles.

155.   To the extent that Plaintiffs' claims arise from Mercedes' fraudulent concealment, there is no one document or communication, and no one interaction, upon which Plaintiffs base their claims.  Plaintiffs allege that at all relevant times, including specifically at the time they purchased or leased their Class Vehicles, Mercedes knew, or was reckless in not knowing, of the Electrical System Defect; Mercedes was under a duty to disclose the Defect based upon its exclusive knowledge of it, its affirmative representations about it, and its concealment of it; and Mercedes never disclosed the Defect to the Plaintiffs or the public at any time or place or in any manner.

156.   Plaintiffs make the following specific fraud allegations with as much specificity as possible although they do not have access to information necessarily available only to Mercedes:

(a)    *Who*: Mercedes actively concealed the Electrical System Defect from Plaintiffs and Class Members while simultaneously touting the safety, reliability, and world-class quality of the Class Vehicles, as alleged in paragraphs 95–130, *supra*. Plaintiffs are unaware of, and therefore unable to identify, the true names and identities of those specific individuals at Mercedes responsible for such decisions.

(b)    *What*: Mercedes knew, or was reckless or negligent in not knowing, that the Class Vehicles contain the Electrical System Defect, as alleged

above in paragraphs 95–130, *supra*.  Mercedes actively concealed the Defect and made contrary representations about the safety, reliability, and world-class quality, reliability, and other attributes of the Class Vehicles, as specified above in paragraphs 95–130, *supra*.

(c)     **When**: Mercedes concealed material information regarding the Defect at all times and made representations about the world-class quality, reliability, and safety of the Class Vehicles, starting no later than 2003, or at the subsequent introduction of certain models of Class Vehicles to the market, continuing through the time of sale/lease, and on an ongoing basis, and continuing to this day, as alleged above in paragraphs 95–130, *supra*.  Mercedes has not disclosed the truth about the Defect in the Class Vehicles to anyone outside of Mercedes. Mercedes has never taken any action to inform consumers about the true nature of the Defect in Class Vehicles.  And when consumers brought their Class Vehicles to Mercedes complaining of battery failures, Mercedes denied any knowledge of or responsibility for the Electrical System Defect.

(d)     **Where**: Mercedes concealed material information regarding the true nature of the Defect in every communication it had with Plaintiffs and Class Members and made contrary representations about the world-class quality, reliability, and safety of the Class Vehicles.  Plaintiffs are aware of no document, communication, or other place or thing, in which Mercedes disclosed the truth about the Defect in the Class Vehicles to anyone outside of Mercedes.  Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manual, or on Mercedes' website.

(e)     **How**: Mercedes concealed the Electrical System Defect from Plaintiffs and Class Members and made representations about the world-class

quality, reliability, and safety of the Class Vehicles.  Mercedes actively concealed the truth about the existence and nature of the Defect from Plaintiffs and Class Members at all times, even though it knew about the Defect and knew that information about the Defect would be important to a reasonable consumer and Mercedes promised in its marketing materials that Class Vehicles have qualities that they do not have.

(f)     *Why***:** Mercedes actively concealed material information about the Defect in Class Vehicles for the purpose of inducing Plaintiffs and Class Members to purchase or lease Class Vehicles, rather than purchasing or leasing competitors' vehicles and made representations about the world-class quality, reliability, safety of the Class Vehicles.  Had Mercedes disclosed the truth, for example in its advertisements or other materials or communications, Plaintiffs (and reasonable consumers) would have been aware of it, and would not have bought Class Vehicles or would have paid less for them.

## X.     TOLLING OF THE STATUTE OF LIMITATIONS

### A.     Fraudulent Concealment Tolling

157.   Upon information and belief, Mercedes has known of the Electrical System Defect in the Class Vehicles since at least 2003, and has concealed from or failed to notify Plaintiffs, Class Members, and the public of the full and complete nature of the Electrical System Defect, even when directly asked about it by Plaintiffs and Class Members during communications with Mercedes, Mercedes Customer Assistance, Mercedes dealerships, and Mercedes service centers. Mercedes continues to conceal the Defect to this day.

158.   Any applicable statute of limitation has been tolled by Mercedes'
knowledge, active concealment, and denial of the facts alleged herein, which
behavior is ongoing.

### B.   Estoppel

159.   Mercedes was and is under a continuous duty to disclose to Plaintiffs
and Class Members the true character, quality, and nature of the Class Vehicles.
Mercedes actively concealed – and continues to conceal – the true character,
quality, and nature of the Class Vehicles and knowingly made representations
about the quality, world-class quality, reliability, and safety of the Class Vehicles.
Plaintiffs and Class Members reasonably relied upon Mercedes' knowing and
affirmative representations and/or active concealment of these facts. Based on the
foregoing, Mercedes is estopped from relying on any statutes of limitation in
defense of this action.

### C.   Discovery Rule

160.   The causes of action alleged herein did not accrue until Plaintiffs and
Class Members discovered that their Class Vehicles contained the Electrical
System Defect.

161.   However, Plaintiffs and Class Members had no realistic ability to
discern that the Class Vehicles were defective until – at the earliest – after the
Electrical System Defect caused their Vehicles' batteries to fail.  Even then,
Plaintiffs and Class Members had no reason to know the battery failures were
caused by a defect in the Class Vehicles because of Mercedes' active concealment
of the Electrical System Defect.  Not only did Mercedes fail to notify Plaintiffs or
Class Members about the Electrical System Defect, Mercedes in fact denied any
knowledge of or responsibility for the Electrical System Defect when directly

asked about it, and, in many instances, actually blamed the owner/lessee for causing the problem. Thus Plaintiffs and Class Members were not reasonably able to discover the Electrical System Defect until after they had purchased or leased the Class Vehicles, despite their exercise of due diligence, and their causes of action did not accrue until, at earliest, they discovered that the Electrical System Defect was causing their Vehicles' batteries to fail.

## XI.   CLASS ACTION ALLEGATIONS

162.   Plaintiffs bring this lawsuit as a class action on behalf of themselves and all other similarly situated individuals pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), (b)(2), and/or (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

163.   Plaintiffs bring this class action on behalf of themselves and all other similarly situated members of the proposed class (the "Class"), defined as follows:

> Consumers who purchased or leased a Class Vehicle
> subject to one of the following TSBs:

LI54.15-P-070802, LI42.47-P-069817, LI54.10-P-066344, LI82.85-P-066086, LI82-95-P-056655, LI27.00-P-072627, LI54.10-P-064762, LI54.10-P-066942, LI54.10-P-071596, or LI54.10-P-069698.

164.   Excluded from the Class are: (1) Mercedes, any entity or division in which Mercedes has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) governmental entities; and (4) claims for personal injuries resulting from the facts alleged herein. Plaintiffs reserve the right to amend the

2378091.14

Class definitions if discovery and further investigation reveal that the Class should be expanded, divided into subclasses, or modified in any other way.

### B.    Numerosity

165.   Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, upon information and belief, Mercedes sold hundreds of thousands of Class Vehicles nationwide, making the number great enough such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.  Class Members are readily identifiable from information and records in Mercedes' possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

### C.    Typicality

166.   The claims of the Plaintiffs are typical of the claims of Class Members in that the Plaintiffs, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, and distributed by Mercedes.  The Plaintiffs, like all Class Members, have been damaged by Mercedes' misconduct in that they have purchased a vehicle they would not have purchased, or for which they would have paid less, and incurred or will incur the cost of service relating to and caused by the Electrical System Defect.  Furthermore, the factual bases of Mercedes' misconduct are common to the Plaintiffs and all Class Members and represent a common thread of misconduct resulting in injury to the Plaintiffs and all Class Members.

### D.    Adequate Representation

167.   Plaintiffs will fairly and adequately represent and protect the interests of the Class Members.  Plaintiffs have retained counsel with substantial experience

2378091.14

in prosecuting consumer class actions, including actions involving defective automotive vehicles.

168.   Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so. Neither Plaintiffs nor their counsel has interests adverse to those of the Class.

### E.   Predominance of Common Issues

169.   There are numerous questions of law and fact common to Plaintiffs and Class Members, the answers to which will advance resolution of the litigation as to all Class Members, and which predominate over any individual question. These common legal and factual issues include:

   A. whether the Electrical System in the Class Vehicles is defective;

   B. whether and when Mercedes knew or should have known about the Electrical System Defect;

   C. whether the defective nature of the Class Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a Class Vehicle;

   D. whether Mercedes had and/or has a duty to disclose the defective nature of the Class Vehicles to Plaintiffs and Class Members;

   E. whether Mercedes omitted and failed to disclose material facts about the Class Vehicles;

   F. whether Mercedes' concealment of the true defective nature of the Class Vehicles induced Plaintiffs and Class Members to act to their detriment by purchasing Class Vehicles;

G.      whether Mercedes represented, through its words and conduct, that the Class Vehicles had characteristics, uses, or benefits that they did not actually have, in violation of Georgia's Fair Business Practices Act ("Georgia FBPA");

H.      whether Mercedes represented, through its words and conduct, that the Class Vehicles were of a particular standard, quality, or grade when they were of another, in violation of the Georgia FBPA;

I.      whether Mercedes advertised the Class Vehicles with the intent not to sell them as advertised, in violation of the Georgia FBPA;

J.      whether Mercedes active concealment of the true defective nature of the Class Vehicles was likely to create confusion or misunderstanding, and therefore fraudulent, within the meaning of Georgia's Uniform Deceptive Trade Practices Act ("Georgia UDTPA").

K.      whether Mercedes active concealment of the true defective nature of the Class Vehicles were and are deceptive within the meaning of the Georgia UDTPA.

L.      whether the Class Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

M.      whether Plaintiffs and the other Class Members are entitled to a declaratory judgment stating that the Electrical Systems in Class Vehicles are defective and/or not merchantable;

N.      whether Plaintiffs and Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

O.      whether Mercedes should be declared financially responsible for notifying Class Members of the problems with the Class Vehicles and for the

costs and expenses of permanently remedying the Electrical System Defect in the Class Vehicles; and

       P.    whether Mercedes is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, service, repair, or replace the defective Electrical Systems.

### F.    Superiority

170.   Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Mercedes unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

171.   Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Mercedes' misconduct. Absent a class action, Class Members will continue to incur damages, and Mercedes' misconduct will continue without remedy.

172.   Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

**FIRST CAUSE OF ACTION**
**Breach of Express Warranty or Written Warranty**
**(by Fred Robanser, Susanna Melanson, and Denise Salles against MBUSA only)**

173.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

174.    Plaintiffs bring this cause of action for themselves and on behalf of all Class Members.

175.    MBUSA is and was at all relevant times a "merchant" with respect to motor vehicles, and specifically the Class Vehicles, under, inter alia, O.C.G.A. § 11-2-104(1), and "sellers" of motor vehicles, and specifically the Class Vehicles, under, inter alia, O.C.G.A. § 11-2-103(1)(d); and, with respect to leases, is and was at all relevant times a "lessor" of motor vehicles, and specifically the Class Vehicles, under, inter alia, O.C.G.A. § 11-2A-103(1)(p).

176.    The Class Vehicles are and were at all relevant times "goods" within the meaning of, inter alia, O.C.G.A. §§ 11-2-105 and 11-9-102(a)(45).

177.    Plaintiffs and Class Members bought or leased Class Vehicles manufactured, marketed to them, and intended to be purchased by consumers such as them, by Mercedes.

178.    MBUSA expressly warranted the Class Vehicles against defects including the Electrical System Defect, as described above, within the meaning of, inter alia, O.C.G.A § 11-2-313(1).

179.    MBUSA's express warranties formed a basis of the bargain that was reached when Class Members purchased or leased their Class Vehicles; namely, that the vehicles included a 4 year/50,000 by a warranty.[4] Any caveats, limitations, or "asterisks" to such coverage were never disclosed to Plaintiffs.

180.    Plaintiffs and Class Members could not assent to any disclaimers or limitations on its new vehicle warranty because Mercedes customers (Plaintiffs and Class Members) only received such terms after the delivery of Mercedes vehicles.

_____

[4] A true and correct copy of the 2020 Service and Warranty Booklet applicable is attached as Exhibit A.

181.   Mercedes prevents Plaintiffs and Class Members from assenting to any disclaimers or limitations on its new vehicle warranties by including such terms in a cellophane-plastic-sealed warranty booklet that is only presented to Plaintiffs and Class Members until after the vehicle delivery.

182.   Mercedes post-sale-and-delivery disclaimers and limitations on its vehicle warranties are ineffectual because such terms go to the essence of Plaintiffs and Class Members' vehicle sale or lease contracts.

183.   As described above, the Electrical System in the Class Vehicles is defective.  The Electrical System Defect substantially impairs the use, value, and safety of the Class Vehicles to reasonable consumers, including Plaintiff and Class Members.

184.   MBUSA knew of the Electrical System Defect, and that this Defect poses serious safety risks to consumers like Plaintiffs and Class Members, when it expressly warranted against the Defect, wrongfully and fraudulently concealed material facts regarding the Defect, failed to inform Class Members that the Class Vehicles had the Defect, and induced Plaintiffs and Class Members to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

185.   Plaintiffs and Class Members were either in privity with MBUSA as original purchasers or lessees, or otherwise afforded the benefits of the express warranty as subsequent purchasers because the warranty itself states: "...warrants to the original and each subsequent owner..." See Exhibit A, page 11.

186.   Pursuant to Page 18 of the 2016 Service and Warranty Booklet, MBUSA warranted to the original and each subsequent owner that their intention "is to repair under warranty, without charge to you, anything that goes wrong with your vehicle during the warranty period which is our fault.."

187.   MBUSA breached its express warranties by supplying the Class Vehicles to Plaintiffs and Class Members with the Electrical System Defect.

188.   MBUSA is obligated, under the terms of its express warranties, to make repair and/or replacements to permanently correct the Electrical System Defect for Plaintiffs and Class Members.

189.   As more fully detailed above, MBUSA was provided with appropriate notice and has been on notice of the Defect and of its breach of express written warranties from various sources.

190.   The Class Vehicles were under this express warranty when they exhibited the Electrical System Defect.

191.   Plaintiffs gave MBUSA a reasonable opportunity to cure its failures with respect to its warranties, and MBUSA failed to do so free of charge or at all.

192.   MBUSA breached its express warranties by failing to permanently repair the Class Vehicles and by failing to provide to Plaintiff or Class Members, as a warranty replacement, a product that conforms to the qualities and characteristics that it expressly warranted when it sold the Class Vehicles to Plaintiff and Class Members.

193.   Affording MBUSA a reasonable opportunity to cure its breach of written warranties was unnecessary and futile here.  When Plaintiffs and other Class Members provided such notice and sought relief under the warranty, MBUSA refused to do so.  Mercedes dealerships told Class Members battery replacements were not covered by their warranties.  When Mercedes dealerships did replace batteries, software, or other electrical components at no charge to Class Members, the battery drains reoccurred again.  Furthermore, several Mercedes

dealerships told Class Members the Defect was a known problem without a permanent fix.

194.   To the extent any express warranties do not by their terms cover the defects alleged in this Complaint, and to the extent the contractual remedy is in any other respect insufficient to make Plaintiffs and Class Members whole, the warranties fail of their essential purpose and, accordingly, recovery by Plaintiffs and Class Members is not restricted to the promises in any written warranties, and they seek all remedies that may be allowed.

195.   Any attempt by MBUSA to limit or disclaim the express warranties in a manner that would exclude coverage of the Electrical System Defect is unconscionable as a matter of law because the relevant purchase/lease transactions were tainted by MBUSA's concealment of material facts.  Thus any such effort by MBUSA to disclaim, or otherwise limit, its liability for the Electrical System Defect is null and void. Any caveats, limitations, or "asterisks" to such coverage were never disclosed to Plaintiffs because:

(a)   Plaintiffs and Class Members could not assent to any disclaimers or limitations on its new vehicle warranty because Mercedes' customers (Plaintiffs and Class Members) only received such terms after the delivery of Mercedes' vehicles.

(b)   Mercedes prevents Plaintiffs and Class Members from assenting to any disclaimers or limitations on its new vehicle warranties by including such terms in a cellophane-plastic-sealed warranty booklet that is only presented to Plaintiffs and Class Members until after the vehicle delivery.

(c)     Mercedes post-sale-and-delivery disclaimers and limitations on its vehicle warranties are ineffectual because such terms go to the essence of Plaintiffs and Class Members' vehicle sale or lease contracts.

196.   As a direct and proximate result of MBUSA's breach of express warranties, Plaintiffs and Class Members received goods that are unreasonably dangerous and have substantially impaired value, and they have suffered incidental, consequential, and other damages, including out-of-pocket costs and the costs of needed present and future repairs, in an amount to be determined at trial, and are entitled to the relief requested *infra*.

**SECOND CAUSE OF ACTION**
**Breach of Express Warranty – Magnuson-Moss Warranty Act**
**(by Fred Robanser, Susanna Melanson, and Denise Salles against MBUSA only)**

197.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

198.   Plaintiffs bring this cause of action for themselves and on behalf of all Class Members.

199.   The Class Vehicles are consumer products as defined in 15 U.S.C. § 2301(1).

200.   Plaintiffs and Class Members are consumers as defined in 15 U.S.C. § 2301(3).

201.   MBUSA is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

202.   MBUSA provided Plaintiffs and Class Members with "written warranties" within the meaning of 15 U.S.C. § 2301(6).

203.   MBUSA breached the Express Warranty by refusing to honor the express warranty to replace or repair, free of charge, any defective vehicle component, including defects within the Electrical System.

204.   At the time Class Vehicles were sold, MBUSA knew of the defects they possessed and offered an Express Warranty with no intention of honoring said warranty with respect to the known defects.

205.   Additionally, pursuant to 15 U.S.C. § 2304(d)(1), "the warrantor may not assess the consumer for any costs the warrantor or his representatives incur in connection with the required remedy of a warranted product . . . [I]f any incidental expenses are incurred because the remedy is not made within a reasonable time or because the warrantor imposed an unreasonable duty upon the consumer as a condition of securing remedy, then the consumer shall be entitled to recover reasonable incidental expenses which are so incurred in any action against the warrantor."

206.   At no time has MBUSA offered a permanent or adequate repair or replacement of the Electrical System that would prevent battery drains and failures. Despite repeated demands by Plaintiffs and Class Members that MBUSA pay the labor costs and incidental expenses associated with permanently repairing or replacing the Electrical System, and with the temporary measures MBUSA has offered instead, MBUSA has refused to do so.  MBUSA's refusal to provide an adequate repair or replacement and to pay for its installation violates 15 U.S.C. § 2304(d)(1).

207.   MBUSA was afforded a reasonable opportunity to cure its breach of the Express Warranty, but failed to do so.

2378091.14

208.   As a direct and proximate result of MBUSA's breach of its express written warranties, Plaintiffs and Class Members have been damaged in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**
**Breach of Implied Warranty (by all Plaintiffs against MBUSA only)**

209.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

210.   Plaintiffs bring this cause of action for themselves and on behalf of all Class Members.

211.   The Class Vehicles are consumer products as defined in 15 U.S.C. § 2301(1).

212.   Plaintiffs and Class Members are consumers as defined in 15 U.S.C. § 2301(3).

213.   MBUSA is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

214.   MBUSA provided Plaintiffs and Class Members with "written warranties" within the meaning of 15 U.S.C. § 2301(6).

215.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

216.   When it sold its Class Vehicles, MBUSA extended an implied warranty to Class Members that the subject vehicles were merchantable and fit for the ordinary purpose for which such goods were sold.

217.   Persons who purchased a vehicle from MBUSA are entitled to the benefit of their bargain: a vehicle with a nondefective Electrical System.

218.   MBUSA breached this implied warranty in that its Class Vehicles are (1) not fit for ordinary use, and (2) not of a merchantable quality.

219.    The Electrical System Defect negatively affects the driveability and usefulness of the Class Vehicles.

220.    Had the fact that the Electrical System Defect existed been disclosed at the time of sale, the Class Vehicles could not have been sold, or could not have been sold at the same price.

221.    As a direct and proximate result of MBUSA's breach of the implied warranty of merchantability, Plaintiffs and Class Members have been damaged in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION
### Breach of Implied Warranty – Magnuson-Moss Warranty Act
### (by all Plaintiffs against MBUSA only)

222.    Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

223.    Plaintiffs bring this cause of action for themselves and on behalf of all Class Members.

224.    Plaintiffs and Class Members are consumers as defined in 15 U.S.C. § 2301(3).

225.    Defendant MBUSA is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

226.    Defendant MBUSA is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

227.    The subject Class Vehicles are consumer products as defined in 15 U.S.C. § 2301(1).

228.    MBUSA extended an implied warranty to Plaintiffs and Class Members by operation of 15 U.S.C. § 2301(7), and this implied warranty covers defects in its Class Vehicles and its Class Vehicles' Electrical Systems.

2378091.14

229.   MBUSA breached this implied warranty by selling its Class Vehicles with defective Electrical Systems that were neither merchantable nor fit for their intended purpose.

230.   MBUSA extended an implied warranty to Plaintiffs and Class Members by operation of 15 U.S.C. § 2301(7), and this implied warranty covers defects in the subject Class Vehicles' Electrical Systems.

231.   MBUSA breached this implied warranty by selling Class Vehicles that were neither merchantable nor fit for their intended purpose.

232.   As a direct and proximate result of MBUSA's breach of the implied warranty under the Magnuson-Moss Act, Plaintiffs and Class Members have been damaged in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION
**Violations of Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390,** *et seq.*
**(by Wynetta Jones against all Defendants)**

233.   Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

234.   Plaintiff brings this cause of action for herself and on behalf of Class Members.

235.   MBUSA and Daimler are each a "person" as defined by the Georgia Fair Business Practices Act ("Georgia FBPA"). O.C.G.A. § 10-1-392(a)(24).

236.   Plaintiff and Class Members are "consumers" within the meaning of the Georgia FBPA. O.C.G.A. § 10-1-392(a)(6).

237.   The purchase or lease of Class Vehicles by Plaintiff and Class Members constituted "consumer transactions" as defined by the Georgia FBPA. O.C.G.A. § 10-1-392(a)(10).

238.   The Georgia FBPA declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, O.C.G.A. § 10-1-393(a), including but not limited to "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, or benefits that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised," *id.* §§ 10-1-393(b)(5), (7) & (9).

239.   By failing to disclose the defective nature of the Class Vehicles to Plaintiff and Class Members, Mercedes violated the Georgia FBPA, because Mercedes represented that the Class Vehicles had characteristics and benefits that they do not have, and represented that the Class Vehicles were of a particular standard, quality, or grade (i.e. state-of-the-art, extraordinary durability and longevity, overachieve, outperform, and overdeliver, etc.) when they were of another. *See* O.C.G.A. §§ 10-1-393(b)(5) & (7).

240.   Mercedes advertised the Class Vehicles (i.e. state-of-the-art, extraordinary durability and longevity, overachieve, outperform, and overdeliver, etc.) with the intent not to sell them as advertised, in violation of § 10-1-393(b)(9).

241.   Mercedes unfair and deceptive acts or practices occurred repeatedly in Mercedes' course of trade or business, were material, were capable of deceiving a substantial portion of the purchasing public, and as a result, caused economic harm to owners and purchasers of the Class Vehicles.

242.   Mercedes knew, by 2003 at the latest, and certainly before the sale or lease of the Class Vehicles, that the Class Vehicles' Electrical Systems suffered

from an inherent design defect, would exhibit problems such as the battery draining overnight, and were not suitable for their intended use.

243.   By 2003 at the latest, Mercedes had exclusive knowledge of material facts concerning the existence of the Electrical System Defect in its Class Vehicles. Furthermore, Mercedes actively concealed this Defect from consumers by denying the existence of the Defect to Class Members who contacted Mercedes about battery failures, and failing to offer Class Members a permanent solution to the Defect.

244.   Mercedes was under a duty to Plaintiff and Class Members to disclose the defective nature of the Electrical Systems, as well as the associated costs that would have to be repeatedly expended in order to repair the Class Vehicles due to the Electrical System Defect, because:

245.   Mercedes was in a superior position to know the true state of facts about the Electrical System Defect in the Class Vehicles;

246.   Plaintiff and Class Members could not reasonably have been expected to learn or discover that the Class Vehicles had the Electrical System Defect until, at the earliest, the first instance of a battery drain or failure.

247.   Mercedes knew that Plaintiff and Class Members could not reasonably have been expected to learn or discover the Electrical System Defect prior to its manifestation.

248.   Mercedes knew or should have known that its conduct violated the Georgia FBPA.

249.   In failing to disclose the defective nature of the Class Vehicles, and/or denying and misleading as to the true cause and remedy of the battery drain and

failure, Mercedes knowingly and intentionally concealed material facts and breached its duty not to do so.

250.   The facts Mercedes concealed from Plaintiff and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease a Class Vehicle. Moreover, a reasonable consumer would consider the Electrical System Defect to be an undesirable quality, as Plaintiff and Class Members did. Had Plaintiff and Class Members known that the Class Vehicles had the Electrical System Defect, they would not have purchased or leased a Class Vehicle, or would have paid less for them.

251.   Plaintiff and Class Members, like all objectively reasonable consumers, did not expect the Electrical System in their vehicles to suffer from numerous battery failures.

252.   As a result of Mercedes' misconduct, Plaintiff and Class Members have been harmed and suffered actual damages, including purchasing numerous replacement batteries.

253.   As a direct and proximate result of Mercedes' unfair or deceptive acts or practices, Plaintiff and Class Members suffered and will continue to suffer actual damages in that they have experienced and may continue to experience battery failures, for which there is no permanent fix, and for which they must pay out of pocket.

254.   Mercedes' violations present a continuing risk to Plaintiff and to the general public. Mercedes' unlawful acts and practices complained of herein affect the public interest.

255.   Plaintiff and Class Members are entitled to equitable relief.

256.   Mercedes received proper notice of its alleged violations of the Georgia FBPA pursuant to O.C.G.A. § 10-1-399(b). On March 22, 2021, May 17, 2021, and February 24, 2022 Ms. Jones, through counsel, sent  notice letters on behalf of herself and all other Class members to Defendants requesting relief and repair of the Defect.  Mercedes through Counsel responded to each letter denying the existence of the Defect and offering no class-wide relief for it.

257.   Thus, pursuant to O.C.G.A. § 10-1-399, Plaintiffs seek, in addition to equitable relief, actual and statutory damages,  attorneys' fees and expenses, treble damages, as permitted under the Georgia FBPA and applicable law.

## SIXTH CAUSE OF ACTION
**Violations of Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370, *et seq*.**
**(by Wynetta Jones against all Defendants)**

258.   Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

259.   Plaintiff brings this cause of action for herself and on behalf of Class Members.

260.   Mercedes, Plaintiff, and Class Members are "persons" within the meaning of Georgia's Uniform Deceptive Trade Practices Act ("Georgia UDTPA"). O.C.G.A. § 10-1-371(5).

261.   The Georgia UDTPA prohibits "deceptive trade practices" which include the "misrepresentation of standard, quality, or grade of goods and services," "engaging in any other conduct which similar creates a likelihood of confusion or misunderstanding," and "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, or benefits that they do not have," and "[a]dvertising goods or services with intent not to sell them as advertised." O.C.G.A. § 10-1-372.

2378091.14

262.   By failing to disclose the defective nature of the Class Vehicles to Plaintiffs and Class Members, Mercedes engaged in deceptive trade practices in violation of the Georgia UDTPA, because Mercedes represented that the Class Vehicles had characteristics and benefits that they do not have, and represented that the Class Vehicles were of a particular standard, quality, or grade (i.e. state-of-the-art, extraordinary durability and longevity, overachieve, outperform, and overdeliver, etc.) when they were of another. *See* O.C.G.A. §§ 10-1-372(5), (7), (9).

263.   Mercedes advertised the Class Vehicles (i.e. state-of-the-art, extraordinary durability and longevity, overachieve, outperform, and overdeliver, etc.) with the intent not to sell them as advertised, in violation of O.C.G.A. § 10-1-372(12).

264.   Mercedes' unfair and deceptive acts or practices occurred repeatedly in Mercedes' course of trade or business, were material, were capable of deceiving a substantial portion of the purchasing public, and as a result, caused economic harm on owners and purchasers of the Class Vehicles.

265.   Mercedes knew, by 2003 at the latest, and certainly before the sale or lease of the Class Vehicles, that the Class Vehicles' Electrical Systems suffered from an inherent design defect, would cause the batteries to drain unexpectedly, and were not suitable for their intended use.

266.   By 2008 at the latest, Mercedes had exclusive knowledge of material facts concerning the existence of the Electrical System Defect in its Class Vehicles. Furthermore, Mercedes actively concealed these defects from consumers by denying the existence of the defects to Class Members who contacted Mercedes about their batteries draining.

267.   Mercedes was under a duty to Plaintiff and Class Members to disclose the defective nature of the Electrical Systems, as well as the associated costs that would have to be repeatedly expended in order to repair the Class Vehicles due to the Electrical System Defect, because, inter alia:

A.   Mercedes was in a superior position to know the true state of facts about the Electrical System Defect in the Class Vehicles;

B.   Plaintiff and Class Members could not reasonably have been expected to learn or discover that the Class Vehicles had the Electrical System Defect until, at the earliest, the first instance of battery failures occurring; and

C.   Mercedes knew that Plaintiff and Class Members could not reasonably have been expected to learn or discover the Electrical System Defect prior to its manifestation.

268.   Despite possessing information to the contrary, Mercedes failed to disclose and actively concealed the Defect while continuing to market the Class Vehicles as world-class and reliable.  The deception made reasonable consumers believe that Class Vehicles were of high quality and designed and made by a company that stood behind its vehicles once they were on the road.

269.   Mercedes knew or should have known that its conduct violated the Georgia UDTPA.

270.   In failing to disclose the defective nature of the Class Vehicles, and/or denying and misleading as to the true cause and remedy of the battery failures, Mercedes knowingly and intentionally concealed material facts and breached its duty not to do so.

271.   The facts Mercedes concealed from Plaintiff and Class Members are material in that a reasonable consumer would have considered them to be

important in deciding whether or not to purchase or lease a Class Vehicle. Moreover, a reasonable consumer would consider the Electrical System Defect to be an undesirable quality, as Plaintiff and Class Members did. Had Plaintiffs and Class Members known that the Class Vehicles had the Electrical System Defect, they would not have purchased or leased a Class Vehicle, or would have paid less for them.

272.   Plaintiff, like all objectively reasonable consumers, did not expect the Electrical System in their vehicles to cause her batteries to drain.

273.   As a result of Mercedes' misconduct, Plaintiff and Class Members have been harmed and suffered actual damages in that the Class Vehicles repeatedly fail to start and leave owner stranded due to the Electrical System Defect, causing inconvenience, creating an unsafe environment for vehicle occupants, and causing Class Members to spend money to repeatedly repair or temporarily fix the Defect.

274.   As a direct and proximate result of Mercedes' unfair or deceptive acts or practices, Plaintiff and Class Members have suffered and will continue to suffer actual damages in that they have experienced and may continue to experience their Class Vehicles' batteries failing.

275.   Mercedes' violations present a continuing risk to Plaintiff and to the general public. Mercedes' unlawful acts and practices complained of herein affect the public interest.

276.   As a direct and proximate result of Mercedes' violations of the Georgia UDTPA, Plaintiff and Class Members have suffered injury-in-fact and/or actual damage.

277.   Plaintiff seeks an order enjoining Mercedes' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia UDTPA and applicable law.

**SEVENTH CAUSE OF ACTION**
**Violation of California Consumer Legal Remedies Act  ("CLRA")**
**(by Fred Robanser and Denise Salles against all Defendants)**

278.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

279.   Plaintiffs bring this cause of action for themselves and on behalf of Class Members.

280.   Mercedes is a "person" as defined by the CLRA. Cal. Civ. Code 149. Plaintiffs and Class Members are "consumers" within the meaning of the CLRA. Cal. Civ. Code § 1761(d).

281.   The purchases and leases of Class Vehicles and the warranties by Plaintiffs and Class Members constitute "transactions" as defined by the CLRA. Cal. Civ. Code § 1761(e).

282.   The Class Vehicles and the warranties constitute "goods" or "services" as defined by the CLRA. Cal. Civ. Code §1761(a) and (b).

283.   Plaintiffs and Class Members purchased or leased the Class Vehicles and the warranties primarily for personal, family, and household purposes as meant by the CLRA. Cal. Civ. Code § 1761(d).

284.   Mercedes' misrepresentations, active concealment, failures to disclose, and omissions regarding the Class Vehicles and the warranties violated the CLRA in the following ways:

(a)    Mercedes misrepresented that the Class Vehicles and the warranties had characteristics, benefits, or uses that they did not have (Cal. Civ. 18Code § 1770(a)(5));

(b)    Mercedes misrepresented that the Class Vehicles and the warranties were of a particular standard, quality, or grade when they were of another (Cal. Civ. Code § 1770(a)(7));

(c)    Mercedes advertised the Class Vehicles and the warranties with an intent not to sell/lease them as advertised (Cal. Civ. Code § 1770(a)(9));

(d)    Mercedes misrepresented that the Class Vehicles and the warranties conferred or involved rights, remedies, or obligations that they did not 26(Cal. Civ. Code § 1770(a)(14)); and

(e)    Mercedes misrepresented that the Class Vehicles and the warranties were supplied in accordance with previous representations when they were not (Cal. Civ. Code § 1770(a)(16)).

285.    Mercedes' unfair and deceptive acts or practices occurred repeatedly in Mercedes' course of trade or business, were material, were capable of deceiving a substantial portion of the purchasing public, and as a result, caused economic harm to purchasers and lessees of the Class Vehicles.

286.    Mercedes knew, by 2008 at the latest, and certainly before the sale or lease of the Class Vehicles, that the Class Vehicles' Electrical Systems suffered from an inherent defect, were defectively designed or manufactured, would cause parasitic battery drains, and were not suitable for their intended use.

287.    Mercedes had exclusive knowledge of material facts concerning the existence of the Electrical System Defect in its Class Vehicles.  Furthermore, Mercedes actively concealed the Defect from consumers by denying the existence

of the Defect to Class Members who contacted Mercedes and its dealerships about the parasitic battery drains, failing to cover temporary "fixes" under warranty, and failing to offer Class Members a permanent solution to the Electrical System Defect.

288.   Mercedes was under a duty to Plaintiffs and Class Members to disclose the defective nature of the Electrical System Defect, as well as the associated costs that would have to be repeatedly expended in order to temporarily address the parasitic battery drains, because:

(a)   Mercedes was in a superior position to know the true state of facts about the Electrical System Defect in the Class Vehicles;

(b)   Plaintiffs and Class Members could not reasonably have been expected to learn or discover that the Class Vehicles had the Electrical System Defect until, at the earliest, the manifestation of the Defect; and

(c)   Mercedes knew that Plaintiffs and Class Members could not reasonably have been expected to learn or discover the Electrical System Defect prior to its manifestation.

289.   The facts concealed or not disclosed by Mercedes to Plaintiffs and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether or not to purchase or lease a Class Vehicle.  Moreover, a reasonable consumer would consider the Electrical System Defect to be an impairment to the driveability and useability of the Class Vehicle, as Plaintiffs and Class Members did.

290.   Had Plaintiffs and other Class Members known that the Class Vehicles had the Electrical System Defect, they would not have purchased or leased a Class Vehicle, or would have paid less for it.

291.   Plaintiffs and Class Members are reasonable consumers who did not expect their Class Vehicles to contain a defective Electrical System.  It is a reasonable and objective consumer expectation for consumers to expect the Electrical System not to cause parasitic battery drains that impair the driveability and useability of the Class Vehicles.

292.   As a result of Mercedes' misconduct, Plaintiffs and Class Members have been harmed and have suffered actual damages in that the Class Vehicles contain defective Electrical Systems that cause parasitic battery drains, results in numerous battery replacements, the purchase and use of battery jump backs to recharge car batteries, costly diagnostics, and rental vehicle expenses.

293.   As a direct and proximate result of Mercedes' unfair or deceptive acts or practices, Plaintiffs and Class Members have suffered and will continue to suffer actual damages in that they have a Vehicle with a defective Electrical System and they have experienced and may continue to experience parasitic battery drains for which there is no permanent fix.

294.   Plaintiffs and the Class are entitled to equitable relief

295.   Mercedes received proper notice of its alleged violations of the CLRA pursuant to Cal. Civ. Code § 1782(a), via a letter sent to Mercedes and its registered service agent on February 24, 2022, on behalf of Plaintiff  Fred Robanser and all others similarly situated. Mercedes failed to provide the appropriate relief for its violation of the CLRA within 30 days of the date of the notification letter. The notice letter is attached hereto as Exhibit B.

296.   Thus, pursuant to Cal. Civ. Code §§ 1780(a), 1780(e), and 1782(a), Plaintiffs seek, in addition to equitable relief, actual damages, restitution, attorneys' fees and costs, and any other relief the Court deems proper.

### EIGHTH CAUSE OF ACTION
### Violation of CaliforniaUnfair Competition Law
### (by Fred Robanser and Denise Salles against all Defendants)

297.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

298.   Plaintiffs bring this cause of action for themselves and on behalf of Class Members.

299.   California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Mercedes engaged in conduct that violated each of this statute's three prongs.

300.   Mercedes committed an unlawful business act or practice in violation of Cal. Bus. & Prof. Code § 17200, *et seq*., by systematically breaching its warranty obligations and by violating the CLRA and the Song-Beverly Consumer Warranty Act as alleged above and below.

301.   Mercedes committed unfair business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*., because the acts and practices described herein, including but not limited to Mercedes' failure to provide a permanent remedy to fix the Electrical System Defect, were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and Class Members. Mercedes' acts and practices were additionally unfair because the harm to Plaintiffs and Class Members is substantial and is not outweighed by any countervailing benefits to consumers or competition. Further, Mercedes' acts and practices were unfair in that they were contrary to legislatively declared or public policy.

302.   Mercedes committed fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*., when it concealed the

existence and nature of the Eletrical System Defect, while representing in its marketing, advertising, and other broadly disseminated representations that its battery, a component of its electrical system, provided "advanced performance," "efficiency," and was "fine-tuned to complement" the "exact network of engine sensors, electrical harnesses, and signal receivers" in the Class Vehicles, which they do not as evidence by the parasitic battery drain. Mercedes' representations and active concealment of the Defect are likely to mislead the public with regard to the true defective nature of the Class Vehicles.

303.   Mercedes' unfair or deceptive acts or practices occurred repeatedly in the course of Mercedes' trade or business, and were likely to mislead a substantial portion of the purchasing public.

304.   Plaintiffs relied on Mercedes' material misrepresentations and nondisclosures, and would not have purchased/leased, or would have paid less for, the Class Vehicles had they known the truth.

305.   As a direct and proximate result of Mercedes' unfair, unlawful, and deceptive practices, Plaintiffs have lost money.

306.   Plaintiffs and Class Members seek an order enjoining Mercedes from committing such unlawful, unfair, and fraudulent business practices, and seek restitution pursuant to Cal. Bus. & Prof. Code § 17203.

## NINTH CAUSE OF ACTION
### Breach of Express Warranty pursuant Song-Beverly Warranty Act
### (by Fred Robanser and Denise Salle against all Defendants)

307.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

308.   Plaintiffs bring this cause of action for themselves and on behalf of Class Members.

309.   The Class Vehicles are "consumer goods" under Cal. Civ. Code § 1791(a).

310.   Mercedes is and was at all relevant times a "manufacturer" and seller of the Class Vehicles under Cal. Civ. Code § 1791(j); and, with respect to leases, is and was at all relevant times a "lessor" of the Class Vehicles under Cal. Civ. Code § 1791(i).

311.   Plaintiffs and Class Members bought or leased Class Vehicles designed, manufactured, warranted, marketed to them, and intended to be purchased or leased by consumers such as them, by Mercedes.

312.   Mercedes expressly warranted the Class Vehicles against defects including the Electrical System Defect, as described above, within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2.

313.   As described above, the Electrical System System in the Class Vehicles is defective. The Electrical System Defect substantially impairs the use, driveability, value, and safety of the Class Vehicles to reasonable consumers, including Plaintiffs and Class Members.

314.   Mercedes knew of the Electrical System Defect when it expressly warranted the Class Vehicles, wrongfully and fraudulently concealed material facts regarding the Defect, failed to inform Class Members that the Class Vehicles had the Defect, and induced Plaintiffs and Class Members to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

315.   Plaintiffs and Class Members were either in privity with MBUSA as original purchasers or lessees, or otherwise afforded the benefits of the express warranty as subsequent purchasers because the warranty itself states: "...warrants to the original and each subsequent owner..." See Exhibit A, page 11.

316.   Pursuant to Page 18 of the 2016 Service and Warranty Booklet, MBUSA warranted to the original and each subsequent owner that their intention "is to repair under warranty, without charge to you, anything that goes wrong with your vehicle during the warranty period which is our fault.."

317.   MBUSA breached its express warranties by supplying the Class Vehicles to Plaintiffs and Class Members with the Electrical System Defect.

318.   MBUSA is obligated, under the terms of its express warranties, to make repair and/or replacements to permanently correct the Electrical System Defect for Plaintiffs and Class Members.

319.   As more fully detailed above, MBUSA was provided with appropriate notice and has been on notice of the Defect and of its breach of express written warranties from various sources.

320.   The Class Vehicles were under this express warranty when they exhibited the Electrical System Defect.

321.   Plaintiffs gave MBUSA a reasonable opportunity to cure its failures with respect to its warranties, and MBUSA failed to do so free of charge or at all.

322.   MBUSA breached its express warranties by failing to permanently repair the Class Vehicles and by failing to provide to Plaintiff or Class Members, as a warranty replacement, a product that conforms to the qualities and characteristics that it expressly warranted when it sold the Class Vehicles to Plaintiff and Class Members.

323.   Affording MBUSA a reasonable opportunity to cure its breach of written warranties was unnecessary and futile here. When Plaintiffs and other Class Members provided such notice and sought relief under the warranty, MBUSA refused to do so.  Mercedes dealerships told Class Members battery

replacements were not covered by their warranties. When Mercedes dealerships did replace batteries, software, or other electrical components at no charge to Class Members, the battery drains reoccurred again. Furthermore, several Mercedes dealerships told Class Members the Defect was a known problem without a permanent fix.

324. To the extent any express warranties do not by their terms cover the defects alleged in this Complaint, and to the extent the contractual remedy is in any other respect insufficient to make Plaintiffs and Class Members whole, the warranties fail of their essential purpose and, accordingly, recovery by Plaintiffs and Class Members is not restricted to the promises in any written warranties, and they seek all remedies that may be allowed.

325. Any attempt by MBUSA to limit or disclaim the express warranties in a manner that would exclude coverage of the Electrical System Defect is unconscionable as a matter of law because the relevant purchase/lease transactions were tainted by MBUSA's concealment of material facts. Thus any such effort by MBUSA to disclaim, or otherwise limit, its liability for the Electrical System Defect is null and void. Any caveats, limitations, or "asterisks" to such coverage were never disclosed to Plaintiffs because:

(a) Plaintiffs and Class Members could not assent to any disclaimers or limitations on its new vehicle warranty because Mercedes' customers (Plaintiffs and Class Members) only received such terms after the delivery of Mercedes' vehicles.

(b) Mercedes prevents Plaintiffs and Class Members from assenting to any disclaimers or limitations on its new vehicle warranties by

including such terms in a cellophane-plastic-sealed warranty booklet that is only presented to Plaintiffs and Class Members until after the vehicle delivery.

(c)     Mercedes post-sale-and-delivery disclaimers and limitations on its vehicle warranties are ineffectual because such terms go to the essence of Plaintiffs and Class Members' vehicle sale or lease contracts.

326.   As a direct and proximate result of MBUSA's breach of express warranties, Plaintiffs and Class Members received goods that are unreasonably dangerous and have substantially impaired value, and they have suffered incidental, consequential, and other damages, including out-of-pocket costs and the costs of needed present and future repairs, in an amount to be determined at trial, and are entitled to the relief requested *infra*.

## TENTH CAUSE OF ACTION
**Breach of Implied Warranty pursuant Song-Beverly Consumer Warranty Act
(by Fred Robanser and Denise Salles against all Defendants)**

327.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

328.   Plaintiffs brings this cause of action for themselves and on behalf of Class Members.

329.   Mercedes' Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

330.   Mercedes is a "manufacturer" within the meaning of Cal. Civ. 11 Code § 1791(j).

331.   Plaintiffs and Class Members who purchased or leased their Class Vehicles within the State of California are "buyers" and "lessees" within the meaning of Cal. Civ. Code §§ 1791(b) and (h).

332.   Mercedes impliedly warranted to Plaintiffs and Class Members that its Vehicles were "merchantable" within the meaning of Cal. Civ. Code 17 §§ 1791.1(a) and 1792.

333.   Mercedes impliedly warranted to Plaintiffs and Class Members that it would repair or replace any defective products, including the defective Electrical System.

334.   The propensity of the Electrical System Defect to render the vehicle inoperable means that the Class Vehicles are not of the quality that a buyer or lessee would reasonably expect, and therefore not merchantable.

335.   The Class Vehicles do not conform to the promises or affirmations of fact made by Mercedes in its promotional materials and vehicle owner manuals in that the Electrical System Defect in the Class Vehicles' means that they are neither "durable," or possess "longevity," nor are the product of "state-of-the-art engineering."

336.   In violation of Cal. Civ. Code § 1791.1(a), Mercedes breached its implied warranty by selling/leasing Class Vehicles that were defective and refusing to permanently replace and/or repair the defective Electrical Systems.

337.   The Electrical System Defect has deprived Plaintiffs and Class Members of the benefit of their bargain, and have caused the Class Vehicles to depreciate in value.

338.   Any attempt by Mercedes to limit or disclaim the express warranties in a manner that would exclude coverage of the Electrical System Defect is unenforceable and void pursuant to Cal. Civ. Code §§ 1790.1, 1792.3, and 1793.

339.   As a result of Mercedes' breach of its implied warranties, Plaintiffs and Class Members have been damaged in an amount to be proven at trial and are

entitled to incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, pursuant to Cal. Civ. Code §§ 1794 and 1795.4.

## ELEVENTH CAUSE OF ACTION
### Violation of New Jersey Consumer Fraud Act ("NJCFA")
### (by Leila Spagnole-Negron against all Defendants)

340.   Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

341.   Plaintiff brings this cause of action for herself and on behalf of Class Members.

342.   Plaintiff, Class Members, and Defendants are "persons" within the meaning of the NJCFA.

343.   Plaintiff and Class Members are "consumers" within the meaning of the NJCFA.

344.   At all relevant times material hereto, Mercedes conducted trade and commerce in New Jersey and elsewhere within the meaning of the NJCFA.

345.   The NJCFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

346.   Mercedes has engaged in unlawful, deceptive practices in the sale of the defective Electrical System in the Class Vehicles as alleged in more detail elsewhere herein, including: (1) selling the Class Vehicles with the defective Electrical System despite knowing it would cause parasitic battery drains and/or malfunction and that Mercedes was unable or unwilling to remedy the failure; and (2) failing to disclose and/or concealing this known Electrical System Defect.

347.   Mercedes knew of the Electrical System Defect prior to the sale/lease of the Class Vehicles.

348.   Mercedes knowingly and intentionally omitted and failed to disclose material facts to Plaintiff and Class Members with respect to the Electrical System Defect, including the fact that, with normal use, the Electrical System would experience parasitic battery drains and/or denying and/or misleading Class Members as to the true cause of the parasitic battery drain.

349.   Mercedes intended to deceive Plaintiff and Class Members and intended that Plaintiff and Class Members rely on Mercedes' misrepresentation, omissions, and acts of concealment, so that Plaintiff and Class Members would purchase or lease the Class Vehicles at a substantial out-of-pocket cost to them.

350.   Plaintiff and Class Members, like all objectively reasonable consumers, did not expect the Electrical System in their vehicles to experience parasitic battery drains that impacted the driveability and use of the Class Vehicles.

351.   Mercedes had a duty to disclose the Electrical System Defect to Plaintiff and Class Members, as well as the associated costs that would have to be repeatedly expended in order to repair the Class Vehicles due to the Electrical System Defect, because Mercedes was in a superior position to know the true state of facts about the Battery System Defect in the Class Vehicles, and Plaintiff and Class Members could not reasonably have been expected to learn or discover that the Class Vehicles had the Electrical System Defect until, at the earliest, the first instances of parasitic battery drains; and Mercedes knew that Plaintiff and Class Members could not reasonably have been expected to learn or discover the Battery System Defect prior to its manifestation.

352.   Had Mercedes disclosed all material information regarding the Electrical System to Plaintiff and Class Members, they would not have purchased or leased the their Class Vehicles or would have paid less for them.

353.   Mercedes' conduct, as described herein, is unethical, oppressive, or unscrupulous in that Mercedes often misled, denied, and dissuaded knowledge, responsibility, warranty obligations, and relief when complaints were made to them. Mercedes often charged for repairs which it knew or should have known to be temporary fixes that did not remedy the defect.

354.   Plaintiff provided notice of the Electrical System Defect and Mercedes has long been on notice of the Defect and of its violation of the New Jersey Consumer Fraud Act from various sources.

355.   The foregoing acts, omissions, and practices directly, foreseeably, and proximately caused Plaintiff and Class Members to suffer ascertainable losses in the form of, inter alia, money spent to purchase the their Class Vehicles, as well as diminution in the value of their Class Vehicles as a result of having a Electrical System Defect, replacement batteries, jump battery packs, rental cars. They are entitled to recover such damages, together with appropriate penalties, including but not limited to treble damages, attorney's fees, and costs of suit.

**TWELFTH CAUSE OF ACTION**
**Violation of Connecticut Unfair Trade Practices Act ("CUTPA")**
**(by Susanna Melanson against all Defendants)**

356.   Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

357.   Plaintiff brings this cause of action for herself and on behalf of Class Members.

358.   Plaintiff, Class Members, and Defendants are "persons" as defined by CUTPA. Conn. Gen. Stat. § 42-110a.

359.   Mercedes engaged in unfair methods of competition and unfair or deceptive acts and practices in the manufacturing, marketing, advertising, sale, leasing, and warranting of Class Vehicles that occurred in the conduct of trade or commerce by systematically breaching its warranty obligations and fraudulently concealing the Electrical System Defect that caused parasitic battery drains from Class Members.

360.   Mercedes committed unfair business acts and practices in violation of Conn. Gen. Stat. § 42-110b, because the acts and practices described herein, including but not limited to Mercedes' failure to provide a permanent remedy to fix the Electrical System Defect, were immoral, unethical, oppressive, and unscrupulous, as well as substantially injurious to Plaintiff and Class Members. Further, Mercedes' acts and practices were unfair in that they were contrary to common law, state and federal statutes, and public policy.

361.   Mercedes committed unfair and deceptive acts and practices, in violation of Conn. Gen. Stat. § 42-110b, when it concealed the existence and nature of the Eletrical System Defect, while representing in its marketing, advertising, and other broadly disseminated representations that its battery, a component of its electrical system, provided "advanced performance," "efficiency," and was "fine-tuned to complement" the "exact network of engine sensors, electrical harnesses, and signal receivers" in the Class Vehicles, which they do not as evidence by the parasitic battery drain, in addition to failing to honor its warranties.

362.   As a direct and proximate result of Mercedes' unfair, unlawful, and deceptive practices, Plaintiff have suffered an ascertainable loss of money and loss in value of their Class Vehicles.

363.   Plaintiff and Class Members seek actual damages, costs and reasonable attorneys' fees, and order enjoining Mercedes from committing such unlawful, unfair, and fraudulent business practices pursuant to Conn. Gen. Stat. § 42-110g.

### THIRTEENTH CAUSE OF ACTION
### Fraud by Concealment
### (by all Plaintiffs against all Defendants)

364.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

365.   Plaintiffs bring this cause of action for themselves and on behalf of all Class Members.

366.   Mercedes concealed and suppressed material facts concerning the quality of the Electrical Systems in the Class Vehicles.

367.   Mercedes concealed and suppressed material facts concerning the serious Electrical System Defect causing Class Vehicles' batteries to drain overnight. Mercedes knew that Plaintiffs and Class Members would not be able to inspect or otherwise detect the Defect prior to purchasing or leasing the vehicles. Mercedes furthered and relied upon this lack of disclosure to further promote payments for temporary measures to abate (but not eliminate) the Defect, and in some cases accused Plaintiffs and Class Members of causing the problem – all the while concealing the true nature of the Defect from Plaintiffs and Class Members. Mercedes further denied the very existence the Defect when Plaintiffs and Class Members complained of the Defect.

2378091.14

368.   Mercedes committed the foregoing acts and omissions in order to boost confidence in its vehicles and falsely assure purchasers and lessees of Mercedes vehicles, that the Class Vehicles were world class, warranted, and reliable vehicles and concealed the information in order to prevent harm to Mercedes and its products' reputations in the marketplace and to prevent consumers from learning of the defective nature of the Class Vehicles prior to their purchase or lease. These false representations and omissions were material to consumers, both because they concerned the quality of the Class Vehicles and because the representations and omissions played a significant role in the decision to purchase or lease the Class Vehicles.

369.   Mercedes had a duty to disclose the Defect in the Class Vehicles because they were known and/or accessible only to Mercedes; Mercedes had superior knowledge and access to the facts; and Mercedes knew the facts were not known to, or reasonably discoverable, by Plaintiffs and Class Members. Mercedes also had a duty to disclose because it made many general affirmative representations about the quality, warranty, and lack of defects in the Class Vehicles as set forth above, which were misleading, deceptive, and/or incomplete without the disclosure of the additional facts set forth above regarding their actual quality, safety, reliability, and usability.  Even when faced with complaints regarding the Defect, Mercedes misled and concealed the true cause of the symptoms complained of.  As a result, Class Members were misled as to the true condition of the Class Vehicles once at purchase/lease and again when the battery failure was complained of to Mercedes.  The omitted and concealed facts were material because they directly impact the value, appeal, and usability of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Whether a

manufacturer's products are as stated by the manufacturer, backed by the manufacturer, and usable for the purpose it was purchased, are material concerns to a consumer.

370.   Mercedes actively concealed and/or suppressed these material facts, in whole or in part, to protect its reputation, sustain its marketing strategy, avoid recalls that would hurt the brand's image and cost money, and did so at the expense of Plaintiffs and Class Members.

371.   On information and belief, Mercedes has still not made full and adequate disclosure and continues to defraud Plaintiffs and Class Members and conceal material information regarding the Defect that exists in the Class Vehicles.

372.   Plaintiffs and Class Members were unaware of these omitted material facts and would not have acted as they did had they known of the concealed and/or suppressed facts, i.e., they would not have purchased or leased Class Vehicles, or would have paid less for them. Plaintiffs and Class Members' actions were justified. Mercedes was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or Class Members.

373.   Because of the concealment and/or suppression of the facts, Plaintiffs and Class Members sustained damage because they negotiated and paid value for the Class Vehicles not considerate of the Defect that Mercedes failed to disclose and paid for temporary measures and replacement parts to attempt to remedy the Defect.  Had they been aware of the concealed Defect that existed in the Class Vehicles, Plaintiffs would have paid less for their vehicles or would not have purchased or leased them at all.

374.   Accordingly, Mercedes is liable to Plaintiffs and Class Members for damages in an amount to be proven at trial.

375.   Mercedes' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs and Class Members' rights and well-being to enrich Mercedes.

**FOURTEENTH CAUSE OF ACTION**
**Unjust Enrichment**
**(by all Plaintiffs against all Defendants)**

376.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

377.   Plaintiffs bring this cause of action for themselves and on behalf of all Class Members.

378.   Mercedes has been unjustly enriched by the Plaintiffs and Class Members through Plaintiffs' and Class Members' purchasing and/or leasing Class Vehicles from Mercedes and purchasing replacement parts and service from Mercedes that Plaintiffs and Class Members would not have purchased but for the Electrical System Defect and Mercedes' concealment of the same.

379.   Plaintiffs and Class Members unknowingly conferred a benefit on Mercedes of which Mercedes had knowledge, since Mercedes was aware of the defective nature of its Class Vehicles' Electrical Systems and the resultant battery drains, but failed to disclose this knowledge and misled Plaintiffs and the Class Members regarding the nature and quality of the subject Class Vehicles while profiting from this deception.

380.   The circumstances are such that it would be inequitable, unconscionable, and unjust to permit Mercedes to retain the benefit of revenue that it unfairly obtained from Plaintiffs and Class Members.  This revenue include the premium price Plaintiffs and the Class paid for the Class Vehicles and the cost of

the parts and service bought from Mercedes used to temporarily alleviate the battery drains and failures caused by the Electrical System Defect.

381.   Plaintiffs and the other members of the Class, having been damaged by Mercedes' conduct, are entitled to recover or recoup damages as a result of the unjust enrichment of Mercedes to their detriment.

## XII.  RELIEF REQUESTED

382.   Plaintiffs, on behalf of themselves, and all others similarly situated, request the Court to enter judgment against Mercedes, as follows:

(a)    an order certifying the proposed Class and/or any appropriate subclasses, designating Plaintiffs as named representatives of the Class, and designating the undersigned as Class Counsel;

(b)    a declaration that the Electrical Systems in Class Vehicles have a Defect that results in battery drains and failures, and that this Defect requires disclosure;

(c)    a declaration that Mercedes must, at its own expense, notify owners and lessees of Class Vehicles of the Defect;

(d)    a declaration that any limitation on the Class Vehicles' warranty that would avoid responsibility for the Defect is void;

(e)    an order enjoining Mercedes to reassess all prior warranty claims related to battery drain;

(f)    an ordering enjoining Mercedes, upon a Class Member's request, to pay the cost of inspection to determine whether the Defect is manifest, with any coverage disputes adjudicated by a special master.

(g)    an order enjoining Mercedes from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles, and to

permanently repair the Class Vehicles so that they no longer possess the Electrical System Defect;

(h)     an award to Plaintiffs and Class Members of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

(i)     an order requiring Mercedes to disgorge, for the benefit of Plaintiffs and Class Members, all or part of the ill-gotten revenue it received from the sale or lease of the Class Vehicles, or make full restitution thereof to Plaintiffs and Class Members;

(j)     an award of attorneys' fees and costs, as allowed by law;

(k)     an award of pre-judgment and post-judgment interest, as provided by law;

(l)     leave to amend this Complaint to conform to the evidence produced at trial; and

(m)     such other relief as may be appropriate under the circumstances.

## XIII.  DEMAND FOR JURY TRIAL

383.   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated: July 1, 2022       Respectfully submitted,

By:_____
          Ketan A. Patel

Ketan A. Patel (State Bar Number 121099)
kp@corpus-law.com
CORPUS LAW PATEL, LLC
PO BOX 724713
Atlanta, Georgia 31139
Telephone:  (678) 597-8020

2378091.14

Annika K. Martin (*pro hac vice* forthcoming)
akmartin@lchb.com
Daniel R. Leathers (*pro hac vice* forthcoming)
dleathers@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone:   (212) 355-9500
Facsimile:    (212) 355-9592

Mark P. Chalos (*pro hac vice* forthcoming)
mchalos@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
222 2nd Avenue South, Suite 1640
Nashville, TN 37201
Telephone:   (615) 313-9000
Facsimile:    (615) 313-9965

Frank J. White (*pro hac vice* forthcoming)
fwhite@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, Suite 2900
San Francisco, CA 94111
Telephone:   (415) 956-1000
Facsimile:    (415) 956-1008

*Attorneys for Plaintiffs and the Proposed Class*

2378091.14